299 So.2d 438 (1974)
Woodrow W. JONES, Plaintiff-Appellant,
v.
SHREVEPORT LUMBER PRODUCTS COMPANY et al., Defendants-Appellees.
No. 12346.
Court of Appeal of Louisiana, Second Circuit.
July 1, 1974.
Rehearing Denied September 4, 1974.
Writ Refused October 25, 1974.
*439 Steven N. Cowel, Shreveport, for plaintiff-appellant.
Cook, Clark, Egan, Yancey & King by Benjamin C. King, Shreveport, for defendants-appellees.
Before AYRES, BOLIN and WILLIAMS, JJ.
Rehearing en Banc. Denied September 4, 1974.
BOLIN, Judge.
Woodrow W. Jones suffered a job-related accident on February 2, 1971, during the course and scope of his employment at Shreveport Lumber Products Company's plant. Plaintiff's weekly compensation rate was $42.90. For his injuries plaintiff was paid $1986.18 for approximately 46 weeks workmen's compensation, plus $2825.07 for medical expenses. Plaintiff sues his employer and its insurer, seeking benefits under the Louisiana Workmen's Compensation Act for total and permanent disability, penalties and attorney's fees. From judgment rejecting his demands plaintiff appeals. We reverse the judgment of the district court.
The primary issues on appeal are whether plaintiff has recovered from his accidental injury or is he entitled to additional workmen's compensation benefits; and if entitled to additional compensation is he entitled to recover penalties and attorney's fees?
Plaintiff was employed by Shreveport Lumber Products as operator of a dipping vat machine used in processing wooden boxes. On February 2, 1971, while climbing overhead to work on a conveyor belt which fed the wooden boxes into the vat, he was accidentally thrown into the machine and thence to the floor. During this fall plaintiff's left foot was momentarily caught in the machine. He suffered a severe crushing injury and partial amputation to the left great toe, which injury is made the basis of this suit.
Immediately after the accident plaintiff was taken to a Shreveport hospital where Dr. Blaine Pittman surgically amputated his left great toe. Osteomyelitis developed from this amputation and on March 3, 1971, plaintiff was readmitted to the hospital where Dr. Pittman did a revision of the amputation stump. According to Dr. Pittman's report dated March 22, 1971, Jones was on "crutch ambulation" and "is unable to bear any weight on this foot. The wire sutures are still in place and will be removed on the next visit." Dr. Pittman stated Jones had been totally disabled since his injury and his return to gainful employment was dependent upon the healing factor of his foot. Treatment of plaintiff was continued until April 9, 1971, when Dr. Pittman discharged him as "cured" according to the insurance report, at which time compensation payments were discontinued.
*440 On May 4, 1971, plaintiff, complaining of disabling pain, contacted Dr. Ray E. King, an orthopedic specialist of Shreveport. Dr. King examined plaintiff and concluded Jones was at that time unable to return to work because of pain and tenderness of the injured foot. He estimated eventual recovery and ability to return to work, with a 25% permanent disability to the left foot.
The present suit was filed May 20, 1971 and defendants answered June 7, 1971, denying receipt of Dr. King's report but admitting liability for the loss of plaintiff's toe.
Dr. King continued to examine and treat plaintiff and on June 28, 1971, he reported plaintiff was better and could return to work. On June 29, 1971, defendants paid plaintiff through his attorney the sum of $471.90, representing eleven weekly compensation payments for the period of April 7, 1971 through June 22, 1971. However, plaintiff returned to Dr. King, still complaining of pain, and on July 29, 1971 Dr. King hospitalized plaintiff and performed an operation excising a bone spur and resectioning a nerve neuroma and extensor tendon between the first and second metatarsal shaft. Plaintiff continued to see Dr. King who treated the wound, prescribed medication for pain and periodically examined the wound area as well as the left knee and hip which plaintiff complained were swelling and causing pain. Dr. King was of the opinion the knee pain was caused by osteoarthritis. He advised plaintiff to obtain a metatarsal bar for his shoe to relieve pressure on the first and second metatarsals. On September 3, 1971, plaintiff was examined and advised he should be able to return to work in the near future and was discharged.
However, on September 13, he returned to Dr. King who reported the wound had opened and there was some drainage and, although this opening had closed, he advised plaintiff to return to be certain no type of infection was taking place in his foot.
Plaintiff made at least 17 visits to Dr. King following the operation on July 29, 1971, and at each visit he complained of pain in the foot and in his left knee, and was treated with injections and advised to follow certain therapeutic procedures to aid him in obtaining relief. On December 20, 1971, Dr. King last saw plaintiff, who was still complaining of pain in the region of the metatarsal shafts. In his report of that date Dr. King found, besides the absence of the great toe and the first metatarsal head, that plaintiff had "slight stiffness and restricted motion in the second metatarsal phalangeal joint". He advised the patient the cramping pain in his left calf was the result of the big toe being gone, which placed a strain on other muscles. The doctor was of the opinion that eventually this would subside and advised hot soaks for his foot. Dr. King concluded he knew nothing else for him to do except to continue with the shoe with the metatarsal bar. The patient was discharged without mention in the report of his ability to work. However, as previously noted, he estimated plaintiff would have a 25% permanent disability of the function of the left foot.
Plaintiff made some effort to return to work but experienced pain and discomfort and on May 12, 1972, he went to Confederate Memorial Medical Center in Shreveport, where he consulted Dr. Lewis C. Jones, a resident orthopedic specialist. Dr. Jones found there was objective evidence of pain in the area of the amputated toe and on May 16, 1972 he performed a surgical excision of a neuroma. He estimated the recovery period on that date to be three weeks. Plaintiff was also examined and treated by Dr. George Belchic, Jr., a resident orthopedic surgeon at Confederate Memorial Medical Center. Dr. Belchic first examined plaintiff in July 1972, and again on October 12, 1972. His diagnosis was that plaintiff had a painful callous on *441 the sole of his foot under the metatarsal head of his second toe of his left foot and recommended he return for further observation.
The various lay witnesses testified they observed plaintiff before and after the accident. We do not find their testimony to be helpful in deciding the extent and duration of plaintiff's disability.
The record reflects the case was initially tried on February 24, 1972; however, upon application of plaintiff the case was reopened for the principal purpose of taking the testimony of Dr. Jones relating to the surgery performed by him on May 16, 1972. The case was again reopened on October 26, 1972 in order that the testimony of Dr. Belchic could be received. The court had previously appointed Dr. W. W. Fox, an orthopedic surgeon of Shreveport, to make an independent examination of plaintiff. Therefore, when the case was heard on October 26, 1972, the testimony of Dr. Belchic and Dr. Fox was taken. Dr. Fox concluded Jones had not more than 25% partial permanent disability in his left foot and that he could return to work without any significant pain. He found no objective evidence of further nerve irritation in the area of the previously diagnosed neuroma, although he admitted that plaintiff complained of numbness of the second toe and had a callous immediately under the medical ball of the foot which was tender to touch, and this "could be a neuroma or it could not be a neuroma."
Following the extensive litigation outlined hereinabove the trial judge, in brief reasons made a part of the record, concluded plaintiff had failed to prove his claim to a legal certainty by a preponderance of evidence. He further found plaintiff was not entitled to penalties and attorney's fees.
A motion for new trial was filed, argued and submitted and the trial judge adhered to his original opinion that plaintiff had failed to prove any disability beyond that for which he had been paid workmen's compensation benefits.
At the time of his injury plaintiff, a common laborer, was 49 years of age and had a fourth grade education. From our review of the medical evidence, together with plaintiff's testimony as to pain, which is borne out by the history of four operations within less than two years and the finding of the tender callous by Dr. Fox, we are convinced plaintiff would be unable to obtain or hold a job necessitating him to walk up and down stairs, stand on his feet for an eight-hour day, to climb a ladder, or do many of the myriad jobs involving constant use of his feet, required of most manual laborers. We find his disability is of such character as to render Jones substantially handicapped in competing with able-bodied workers in the common labor market, and that he is entitled to workmen's compensation benefits for total and permanent disability. Stephney v. Robertson (La.App. 4 Cir. 1969), 219 So.2d 9; Carlisle v. Great American Ins. Co. (La. App.2d Cir. 1974), 291 So.2d 449.
However, we find the action of the employer or the insurer in discontinuing compensation payments at various times was not arbitrary or capricious, since the cessation was based on medical advice that the employee was able to return to work and that plaintiff would have only loss of a great toe and a 25% loss of function of the left foot, for which plaintiff has already been paid.
For assigned reasons the judgment of the lower court is annulled and set aside and judgment is now rendered in favor of Woodrow W. Jones and against defendants, Shreveport Lumber Products Company and State Automobile Insurance Association, in solido, for total and permanent disability benefits under the Louisiana Workmen's Compensation Act, at the weekly rate of $42.90, beginning February 12, 1971, and continuing weekly thereafter *442 during his disability for a period not to exceed 500 weeks, with legal interest on each overdue payment from date due until paid, less a credit for compensation payments previously made. Plaintiff's demands for penalties and attorney's fees are rejected.
Defendants are cast for all costs.