351 So.2d 304 (1977)
Carl Bradford PHILLIPS, Plaintiff-Appellee,
v.
DRESSER ENGINEERING CO. & the Home Indemnity Company, Defendants-Appellants.
No. 6149.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1977.
Rehearing Denied November 10, 1977.
*305 Raggio, Farrar, Cappel & Chozen by R. W. Farrar, Jr., Lake Charles, for defendants-appellants.
Nathan A. Cormie and Ronald J. Bertrand by Ronald J. Bertrand, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, WATSON and FORET, JJ.
FORET, Judge.
This appeal derives from the judgment of the trial court in favor of plaintiff-appellee, Carl Bradford Phillips, and against defendants-appellants, Dresser Engineering Company and The Home Indemnity Company, awarding plaintiff total and permanent compensation benefits, penalties in the amount of 12% on all weekly compensation benefits overdue or which in the future become overdue by a period in excess of sixty (60) days, and attorney fees in the amount of $3,000.00. Defendants have appealed from such judgment and assign as errors:
(1) The trial court finding that appellee was totally and permanently disabled;
(2) Alternatively, the trial court erred in finding that plaintiff suffered substantial pain in performing work subsequent to April 2, 1976;
(3) The court erred in awarding penalties;
(4) The trial court erred in awarding the sum of $3,000.00 as attorney fees.
Plaintiff-appellee answered the appeal, and prayed for an increase in attorney fees to $5,000.00.
After a close scrutiny of the entire record on appeal, we conclude that the judgment of the trial court was correct and adopt its reasons therefor as our own, quoting in part as follows:
"This is a workmen's compensation case wherein plaintiff alleges that he was totally and permanently disabled on October 15, 1975, while he was employed by defendant, Dresser Engineering Company of Oklahoma as a welder's helper. Dresser Engineering Company of Oklahoma is a contracting and construction company and at the time of the accident it was engaged in installing pipe and equipment at Johnson Bayou, Louisiana. Home Insurance Company is the compensation carrier for defendant, Dresser Engineering Company of Oklahoma. Plaintiff was a welder by trade but he had been unable to get a job as a welder and had taken the job with defendant, Dresser Engineering Company of Oklahoma as a helper until such time as he could work as a welder. Plaintiff testified that on the day of the accident he and his co-workers were installing a 2-inch pipeline. As a welder's helper he was required to work with other helpers, carry the 30-foot lengths of pipe and place them in position to be welded, grind the end of the pipe if necessary and after the welder had made the weld to clean and dress the weld. It seems that it was necessary to carry the pipe across a ditch and roadway to the welding site. The procedure of carrying the pipe and placing it in position for welding had been in progress all morning on October 15, 1975. Just before the alleged injury, plaintiff and either two or three co-workers picked up a joint of pipe to carry it across the ditch and roadway to the welding site. There is conflicting testimony as to whether four men carried the pipe. There is no conflict in the testimony that plaintiff was in the center of the length of pipe and that it was carried on their shoulders. Plaintiff testified that the men on the end of the pipe in front and he had already crossed the ditch when the man or men behind him and carrying the other end of the pipe apparently stepped into the ditch. This caused the weight of the pipe to be suddenly thrust upon plaintiff. He said he felt a sudden pain in his back between his shoulder blades, he was unable to hold the weight and he allowed the pipe to slide off his right shoulder along his arm and held it with his hand. At that point the man behind him was able to hold *306 some weight and they proceeded to carry the pipe to the welding site. After the pipe was placed in position plaintiff testified it was time to knock off for lunch so he walked over to where some of the welders was standing near a truck and told them he was going home for lunch. Although he said he did not think at the time he was injured he mentioned to them that he had sprained his back. Plaintiff lived nearby and he testified that when he arrived home the pain in his back had become intense and he lay down on a couch. When it came time to return to the job after lunch he testified that the pain was so severe that he knew he would be unable to continue working that day. Plaintiff apparently felt that he should report back to the job site so he lay down on the back seat of the family automobile and his wife drove him back to his place of employment. Both Mr. and Mrs. Phillips talked to Mr. Murl Clark, the superintendent and advised him of the injury. Mr. Clark testified that when he was informed of the accident he filled out an accident report form for his company. Upon questioning by the Court, Mr. James Harrell, Division Manager for Dresser Engineering testified that the report forms were furnished the field locations in case of an accident. Mr. Clark, the foreman, also testified that after making out the accident report he notified the division office in New Iberia by telephone either the same day or the following day. At the time the report was filled out by Mr. Clark, plaintiff testified that he told his supervisor that he needed to see a doctor and that Mr. Clark made no recommendations as to which doctor to see. Mr. Clark also testified that plaintiff had told him that he needed to see a doctor and that he, Clark, did not make a recommendation as to who plaintiff should see. Plaintiff then testified that he and his wife went to the West Calcasieu-Cameron Hospital in Sulphur, Louisiana, some 45 miles away. Plaintiff said he went to the hospital emergency room and was advised that they could not help him. The hospital sent him to see a Dr. Charles Smith whose office was nearby. Dr. Smith examined plaintiff, gave him a prescription and said if the pain persisted to come back and see him.[1] Plaintiff had the prescription filled in Sulphur and returned to his home in Johnson Bayou. After continuing to have difficulty, plaintiff went to see Dr. Cecil Clark in Cameron, Louisiana on October 17, 1975. Dr. Clark examined plaintiff and had an x-ray made. Dr. Clark testified that he could find no fractures and the x-ray did not show any abnormality although plaintiff was experiencing considerable muscle spasm in his upper back. He prescribed drugs for pain and told plaintiff to come back in a few days. On October 20, 1975, plaintiff returned to Dr. Clark still experiencing pain and he was sent to the South Cameron Hospital for x-rays. Dr. Clark testified that the x-rays were made by Dr. Romero, a radiologist at the South Cameron Hospital and he received a report from Dr. Romero indicating that there was wedging and a compression fracture of three vertebras in the upper back. When asked why the x-rays he had taken a few days earlier did not show such fractures Dr. Clark explained that it was normal and usual for such compression fractures not to manifest themselves until sometime after the accident. Dr. Clark saw plaintiff on a number of occasions and plaintiff continued to have difficulty. Dr. Clark testified that he concluded plaintiff should see a specialist and he was sent to Dr. Akins in Lake Charles, an orthopaedist.
"Dr. Akins did not testify in open court, but his deposition was introduced into evidence. Dr. Akins testified that he saw Mr. Phillips for the first time on November 19, 1975 at which time he was complaining of low back pain. Dr. Akins found no objective symptoms of injury or pain with the exception of a possible fracture of the first lumbar vertebra. Dr. Akins prescribed a corset for plaintiff at that time. On December 9, 1975, Dr. Akins again x-rayed plaintiff and confirmed a fracture of the L1 vertebra. He prescribed continued use of the corset and estimated disability at that time from *307 three to six months from date of injury. Dr. Akins again saw plaintiff on January 9, 1976, at which time plaintiff was complaining with pain in the thoracic area. At this time x-ray revealed that the disc between the T12 thoracic vertebra and the L1 lumbar vertebra was beginning to calcify, as is typical he stated, after a compression fracture type injury. At this time the patient was given an injection of cortisone to relieve the pain. He saw plaintiff next on February 20, 1976, and again injected the patient as he was still having pain. On April 6, 1976, Dr. Akins saw plaintiff for the last time. On this visit plaintiff said he was still having some pain but requested the doctor to permit him to return to light duty. At trial, Mr. Phillips explained that he was having severe economic problems in April of 1976 and that was the reason he asked Dr. Akins to permit him to return to work. As of April 6, 1976, Dr. Akins testified he was of the opinion that Mr. Phillips would have a permanent disability of 3% to the individual and if the pain persisted, the percentage of disability would increase. Furthermore, Dr. Akins testified that if the pain did continue, then disability would continue until such time plaintiff underwent surgery.
"After Dr. Akins released plaintiff to light duty in April of 1976, plaintiff did not seek further medical attention until August 3, 1976 when he returned to Dr. Clark, still complaining of high and low back pain. Although Dr. Clark saw plaintiff again on August 18, 1976, he testified that in his opinion, plaintiff is not going to improve and that his condition is going to steadily worsen. Plaintiff testified that he is still having considerable difficulty. He testified that because of his severe economic situation, it was absolutely necessary that he worked [sic]. He testified that he found a job in Alvin, Texas as a welder where he is working at present. This employment does not require him to do any lifting and he is able to do most of his welding in a sitting position. He testified that he can only sit for 20 or 30 minutes at a time and then it is necessary for him to get up and move around in an effort to relieve the pain in his back. Plaintiff testified that the pain in his back is continual and that at times it is so severe that he is unable to sleep at night. Mrs. Phillips and Clayton Henry, plaintiff's step-father, both verified that plaintiff was having difficulties with his back and that he had no difficulty prior to October 15, 1975.
"At the request of Home Insurance Company of New Orleans, plaintiff was examined by Dr. Jerome Ambrister who testified by deposition. This examination occurred on August 11, 1976. Dr. Ambrister testified that he found no objective symptoms of pain or disability. Dr. Ambrister did find a wedging type of deformity of the first lumbar vertebra. In the opinion of Dr. Ambrister, the deformity of L1 vertebra was of long standing, that is, not a result of the accident of October 15, 1975. Also, Dr. Ambrister did not find the new calcification as did Dr. Akins. Dr. Ambrister also testified that it is possible for a patient to have pain without having objective signs.
"The issues before the Court are:
1. Was plaintiff hurt or injured during the course and scope of his employment.[[2]]
2. If he was injured, what is the extent and duration of his disability.
3. Was the employer arbitrary and capricious in failing to provide workmen's compensation benefits and medical attention, thus entitling plaintiff to penalties and attorney's fees.
"The Court concludes that plaintiff was injured during the course and scope of his employment.
"The issue of the extent and duration of disability presents somewhat of a dilemma. Prior to September 1, 1975, R.S. 23:1221 provided for compensation benefits for injury producing disability to do work of any reasonable character. It has been held that an injured workman who is unable to perform his usual and normal duties without pain is totally disabled. That is to say, such *308 an injured workman is handicaped [sic] in competing with other able bodied workers in the common labor market. Duray v. Continental Insurance Company, 332 So.2d 312 (La.App. 4th Cir. 1976); Jones v. Shreveport Lumber Products Company, 299 So.2d 438 (La.App. 2nd Cir. 1974).
"In Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d. 849 (1969), the Supreme Court through Justice Summers said:
The test applied by the courts in determining permanent total disability is expressed in Lindsey v. Continental Casualty Company, 242 La. 694, 138 So.2d 543 (1962) in these words:
"* * * (A) skilled worker is deemed totally disabled within the intendment of the law if he is unable to do work of the same character as that which his training, education, and experience qualify him to perform, without unusual difficulty or danger. This rule is applicable to a skilled worker who cannot perform a substantial portion of the work incident to his special occupation." See also Oliver [Olivier] v. Liberty Mutual Insurance Co., 241 La. 745, 131 So.2d. 50 (1961) and Brannon v. Zurich General Accident & Liability Insurance Co., 224 La. 161, 69 So.2d. 1 (1953).
"By act No. 583 of 1975, 23:1221 was amended so as to delete the phrase "to do work of any reasonable character" and in its place there was added the phrase "to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience." The pertinent portion of R.S. 23:1221, as to permanent and total disability, provides:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.
"Obviously the legislature intended to modify and amend the workmen's compensation act and to legislatively change the judicial definition of total disability. Prior to September 1, 1975, a workman was disabled if he could not return to the same or similar work, perform the same duties without danger to himself and others and all without pain.
"Commencing in April of 1976, plaintiff began working in his trade as a welder but in considerable and substantial pain. His explanation for going to work at that time [was] because of severe financial conditions. His explanation was certainly logical and plausible. He had been off work since October 15, 1975 and had received no compensation benefits of any kind. Yet, a literal interpretation of the amended act would seem to indicate that if plaintiff is working, he is not permanently disabled but only partially disabled. I cannot believe that it was the intent of the legislature to require an injured workman who has never fully recovered from his injury, to go out and find employment and to work in substantial pain. Such a workman would be a hazard to himself and all fellow workers. In my judgment, I feel that it was the intention of the legislature to say in effect, if a workman has recovered from his injury to such an extent that he may do some income producing work, but not the same work as before injury, then he may not recover benefits under the act as a totally and permanently injured workman. [However] I do not interpret the amended act to mean a workman who is in substantial pain while doing any work must still return to some gainful employment. To hold otherwise would mean that only a paraplegic could be considered totally and permanently disabled *309 under the present workmen's compensation act.[[3]]
"In my judgment considering both the expert and lay testimony, plaintiff is experiencing considerable and substantial pain and such pain will continue indefinitely. There was some testimony to the effect that an operation may relieve plaintiff's pain but there has been no showing that an operation is a necessary requisite to receive workmen's compensation benefits. I find plaintiff, Carl B. Phillips, to be totally and permanently disabled.
"On the issue of penalties and attorney's fees, Mr. Harrell, Division Manager, testified on behalf of defendant, Dresser. According to his testimony, defendant had no knowledge of the accident until the company received a copy of Dr. Clark's report dated October 20, 1975. The report was received apparently on October 23rd. However, Murl Clark, the supervisor at the job site testified that he had knowledge of the accident approximately 1:00 P.M. on October 15, 1975, some one hour after the accident and at that time he filled out an accident report. He also testified that he notified the New Iberia office either that same day or the following day by telephone. Furthermore, Dr. Clark testified that prior to treating plaintiff on October 17, his office telephone[d] Dresser Engineering and there was a notation on his file indicating that a person named "Murl" authorized treatment. Obviously the person named "Murl" was Murl Clark, the superintendent. Also during the taking of Dr. Akins' deposition, the attorney for the compensation carrier acknowledged the carrier had received a copy of Dr. Akins' report prior to the filing of suit. The Court concludes that the employer did have timely notice of the accident[,] and its failure to pay workmen's compensation benefits and to provide medical treatment was arbitrary and capricious. There was no evidence whatsoever which would establish a justification to withhold payment of compensation and medical expenses.[[4]] The Court concludes plaintiff is entitled to twelve per cent (12%) as penalties."
Plaintiff has answered this appeal and requested an increase in attorney fees. The judgment of the trial court awarding attorney fees shall be increased by $500.00 to $3,500.00. Basco v. State of Louisiana, Through Dept. of Corrections, 335 So.2d 457 (La.App. 1 Cir. 1976), writ denied La., 338 So.2d 701; Chavis v. Maryland Cas. Co. 307 So.2d 663 (La.App. 3 Cir. 1975), writ denied La., 310 So.2d 854; Thibodeaux v. Associated Distributing Co., 260 So.2d 46 (La.App. 3 *310 Cir. 1972), writ denied 262 La. 131, 262 So.2d 395.
Costs are to be borne by defendants-appellants.
AFFIRMED IN PART, AMENDED IN PART.
WATSON, J., dissents in part and concurs in part and assigns written reasons.
WATSON, Judge, dissenting in part and concurring in part:
The fundamental question presented by this appeal is whether under the current workmen's compensation laws, an injured employee is totally and permanently disabled if he has returned to work but experiences pain in discharging his duties. A second, and also important, issue is whether plaintiff is entitled to penalties and attorney's fees.
The statutory context of the pain issue is that the Workmen's Compensation Act was amended by Act No. 583 of 1975 to change the definition of total and permanent disability as well as to provide more liberal monetary benefits for injured employees. LSA-R.S. 23:1221 was amended to change sub-section 2, which had previously read as follows:
"For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not beyond four hundred weeks."
to read now as follows:
"For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability."
Also, under the 1975 amendment, the measure and duration of compensation benefits were increased substantially.
It is generally recognized that an objective of the 1975 amendment was to tighten up the definition of total and permanent disability while making more generous the amount which could be obtained by the truly disabled employee. See Comment, 36 La.L.R. 1018.
The facts of the accident and the medical evidence are important in considering the precise basis on which the trial court made its finding of total and permanent disability.
On October 15, 1975, Phillips suffered a twisting type injury to his back while assisting either two or three other men in carrying a joint of heavy pipe. Plaintiff said the accident occurred when he turned to see whether one of the other men had released the pipe. After turning, he let the pipe slide off his shoulder onto his arm. He felt a sharp pain in his back.
Phillips did not fall down or cry out at the time. The other men carrying the pipe did not see or hear anything to signal the accident. (Testimony of Gerald Doucet at TR. 210) They learned about it after the lunch hour when Phillips told them he was going to the doctor. (TR. 208)
Phillips was off work from October 15, 1975 until April, 1976 when he obtained a job as a welder and moved to Alvin, Texas. He took and passed a medical examination when he went to work. At the time of the trial, he was working from 48 to 52 hours per week and making $4.75 an hour. His employment on the date of injury was as a welder's helper and his wages were $3.40 an hour.
Plaintiff testified that in his current employment he is working in great and substantial pain. However, he did not indicate that he had missed any work as the result of pain and he did not call any fellow employees who could substantiate his complaints. His medication at the time of trial consisted of non-prescription drugs such as aspirin.
The trial judge found corroboration for plaintiff's pain in the testimony of his wife, who did in fact testify that plaintiff was *311 suffering pain after work. However, the trial judge erred in finding corroboration by Clayton Nunez (incorrectly identified as Clayton Henry), because Mr. Nunez, who is plaintiff's stepfather, testified only concerning the period between the accident and the time Phillips left to go to work in Texas. (TR. 226)
Thus, as far as lay testimony is concerned, the only indication that plaintiff is working in pain is that found in his own testimony and in that of his wife who observes him after he returns home from work.
The medical testimony is somewhat incomplete and also somewhat inconsistent. Dr. Charles Smith, who was the first physician to see plaintiff after the accident, did not testify at all. Dr. Cecil Clark, who is a general practitioner, found at the outset a myofascial strain but later found, on the basis of x-ray diagnosis by a Dr. Romero, minimal compression fractures of three dorsal (thoracic) vertebrae, D-3 D-5. Dr. Clark found plaintiff unable to do heavy work but indicated that he could return to light duty on his last examination. The last examination and the last prescription of medication was on April 2, 1976, and Dr. Clark indicated that plaintiff had, in his opinion, a very poor prognosis.
The next physician, Dr. William Akins, an orthopedic specialist of Lake Charles, examined and treated Phillips on several occasions by referral from Dr. Clark. Apparently, Dr. Akins and Dr. Clark were treating plaintiff on a somewhat concurrent basis. Dr. Akins first saw plaintiff on November 19, 1975, and he diagnosed a possible mild compression fracture of L-1. He prescribed an orthopedic corset for plaintiff to wear. On the next visit, about two weeks later, plaintiff had improved but still had some back pain. Dr. Akins continued to see plaintiff in January, when he obtained x-rays of the thoracic region which he found to be normal. On April 2, 1976, Dr. Akins instructed plaintiff that he could return to light duty. This was the same date that Dr. Clark also sent plaintiff back to light duty. As of that time Dr. Akins said in his opinion that Phillips would fully recover but he told him to return if he suffered substantial pain. Dr. Akins indicated that in his opinion, plaintiff had suffered a minimal compression fracture of the L-1 vertebrae and that this resulted in a three per cent disability of his body.
As of the time of trial, plaintiff had not returned to Dr. Akins.
The last physician that saw plaintiff was Dr. Ambrister, another orthopedic surgeon, who examined plaintiff on behalf of defendants. Dr. Ambrister suspected an injury to L-1 but after viewing earlier films, he concluded that the defect existing in that vertebrae was of longstanding. He found no spasm and no objective sign of injury to plaintiff. He stated that in his opinion plaintiff would be free of pain in his employment.
On the basis of the lay testimony and summarized medical opinions, I would find that the trial judge erred as a matter of law in holding that plaintiff is totally disabled ". . . to engage in any gainful occupation for wages, . . ." as required by LSA-R.S. 23:1221, as amended. Obviously, plaintiff is working now and at a better wage than at the time of the accident. In addition, he has a higher position (a welder instead of a welder's helper) in the same trade or craft.
Pain cannot be ruled out as a totally disabling factor in every case, but the pain proved here, either by medical or lay witness, is not to my notion sufficient to support a finding of total and permanent disability. Some of the factors which impress me are: no showing that plaintiff has missed any work; no inability to hold a steady job; and no proof of limitation of duties. Also, a very impressive fact is that Phillips took and passed a pre-employment physical for his current job as a welder.
On the penalty issue, I agree that the insurer was arbitrary in failing to pay benefits from the date of injury until the return to light duty in April, 1976. Plaintiff is entitled to penalties for that period and to attorney's fees.
*312 Therefore, I respectfully dissent on the pain issue and concur on the penalty issue.
NOTES
[1] However, Dr. Smith did not testify in the case. (Footnote by appellate court)
[2] This issue was not urged on appeal.
[3] On this issue, we would add our own comments to those of the trial court:

Act No. 583 of the 1975 Regular Session of the Louisiana Legislature, amending LSA-R.S. 23:1221, as to permanent and total disability makes no reference whatsoever to a situation where an injured employee recovers to such an extent that he can do some work post-injury, but does so under great or substantial pain and physical distress.
Prior to Act 583 of 1975, it was axiomatic, in Louisiana jurisprudence, that a worker who recovered sufficiently to return to gainful employment, but could only do so in great or substantial pain, was generally considered to be totally and permanently disabled. The rationale of this rule was that the workmen's compensation act should be considered in the light of its philosophically humane overtones. Consequently, such a worker who returned to gainful employment presumably because of economic distress considerations should not be penalized therefor by denying him workmen's compensation benefits for total and permanent disability. (The cases so holding are too numerous to mention herein.)
We would make reference, however, to the expressions contained in the text of Louisiana Workmen's Compensation, Law and Practice, by Professor Wex Malone, Sections 274 and 278. While this venerable treatise was published 24 years prior to Act 583, and the myriad of cases applying the great or substantial pain factor antedated Act 583, nonetheless we are of the opinion that the rationale and philosophy advocated and relied upon prior to Act 583, retained their validity after Act 583. The Legislature, in adopting the said Act, could very well, if it intended to affect the jurisprudence on this issue, have included language therein to legislatively alter or overrule the said jurisprudence. We construe its failure to do so as an intent to leave such jurisprudence undisturbed.
[4] As of September 15, 1977, the date of oral argument in this Court, defendants-appellants have yet to pay plaintiff any weekly compensation benefits, or medical expenses. (Footnote by appellate court.)