361 So.2d 940 (1978)
Robert L. ASHWORTH, Plaintiff-Appellant,
v.
ELTON PICKERING, INC., et al., Defendants-Appellees.
No. 6559.
Court of Appeal of Louisiana, Third Circuit.
July 11, 1978.
*941 Baggett, McCall, Singleton & Ranier, Homer C. Singleton, Jr., Lake Charles, for plaintiff-appellant.
Raggio, Farrar, Cappel & Chozen; Frederick L. Cappel, Lake Charles, for defendants-appellees.
Before CULPEPPER, DOMENGEAUX, WATSON, FORET and CUTRER, JJ.
FORET, Judge.
This is a workmen's compensation suit involving the issues of whether the plaintiff, Robert L. Ashworth, has sustained a compensable injury and whether he has a permanent total disability as a result of the injury. Also at issue is whether the defendant, Rockwood Insurance Company, the compensation insurer of the plaintiff's employer, Elton Pickering, Inc., discontinued compensation payments arbitrarily, capriciously, or without just cause, thereby entitling the plaintiff to penalties and attorney fees.
The plaintiff appeals from the judgment awarding him benefits for permanent partial, not total, disability, and denying him statutory penalties and attorney's fees. The defendants have answered the appeal, seeking a reversal of the trial court's conclusion that the plaintiff sustained a compensable injury and that the plaintiff is presently disabled.
The facts concerning the plaintiff's employment, the accident and injury, are brief and not in dispute. On December 31, 1975, the plaintiff suffered dizziness, choking, shortness of breath, and pain in his chest and left arm while acting in the course and scope of his employment as a log cutter for Elton Pickering, Inc. Some of his difficulties were noticed by fellow employees. The following morning the plaintiff went to the West Calcasieu-Cameron Hospital where he was seen by Dr. C. M. Smith, who diagnosed the difficulty as congestive heart failure and began treatment as an out-patient for that condition. After retaining the plaintiff in the hospital for three days, Dr. Smith was of the opinion that the hard labor performed by the plaintiff on December 31, 1975, helped bring on the heart failure.
Subsequently, the plaintiff was examined by Dr. Buttross, cardiologist, who concluded the plaintiff suffered from coronary heart disease with angina pectoris resulting from coronary atherosclerosis. Dr. Buttross did not dispute Dr. Smith's conclusion as to the plaintiff's condition on or about December 31, 1975. He was of the opinion that further strenuous activity by the plaintiff would precipitate additional angina attacks.
Dr. Woodard examined the plaintiff on November 30 of 1976, and his diagnosis was artheriosclerotic heart disease. He agreed that strenuous physical exertion by the plaintiff would cause angina attacks.
Mr. Ashworth attempted to return to work as a log cutter after a period of treatment, but exertion produced chest pains, forcing him to quit. Since that occasion he has not returned to any gainful employment. The plaintiff is illiterate and has no other work experience.
*942 The trial court found that the plaintiff sustained an accident and injury within the meaning of the workmen's compensation law on December 31, 1975, and that there was a legal causal connection between that accident and injury and his disability. The court primarily relied upon Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1968). After reviewing the record and the jurisprudence, we find no reversible error in the trial court holding on this issue.
The plaintiff contends on this appeal that he is permanently and totally disabled within the meaning of R.S. 23:1221, as amended by Act 583 of 1975. It is undisputed that the plaintiff has not returned to work since the termination of benefits by defendants on March 10, 1977. The medical experts were in agreement that the plaintiff would be able to perform light work without pain or harm to his health. It is clear that he will never be able to do work requiring strenuous physical activity.
Prior to the amendment in 1975, R.S. 23:1221 was interpreted as meaning that a worker was deemed totally disabled if he was unable to do work of the same character as that which his training, education and experience qualified him to perform without unusual difficulty or danger. Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d 849 (1969).
The 1975 amendment, Act No. 583, to R.S. 23:1221 deleted the phrase "to do work of any reasonable character" and added "to engage in any gainful occupation for wages, whether or not the same or similar occupation as that in which the employee was customarily engaged when injured, and whether one for which the employee, at the time of the injury, was particularly fitted by reason of education, training and experience."
The 1975 Legislature also changed the definition of partial disability. Partial disability is now defined as disability to perform the duties in which the worker was customarily engaged when injured, or duties of the same or similar character for which the worker was fitted by education, training, and experience. Clearly, this definition substantially encompasses the jurisprudential definition of permanent total disability prior to 1975.
Included in the 1975 amendment by Act 583, was an increase in the disability benefits. Rather than limiting permanent total disability benefits to 65% of wages for the period of disability and not beyond 400 weeks, the new law raises it to 662/3% of wages and deletes the 400-week limitation. Similarily, the partial disability benefits were raised to 662/3%, and the former 300-week limitation was raised to 400 weeks for accidents occurring in the first year under the new law with successive annual increases the next two years up to 450 weeks for injuries occurring after September 1, 1977. As amended, however, 1221(3) provides that if an employee secures other employment subsequent to the injury, then the worker's compensation would be computed on the basis of 662/3% of the difference between wages earned at the time of injury and wages actually earned thereafter.
Clearly, the 1975 legislation had three primary purposes. First, it increased the compensation benefits for disabled workers. Second, it made the availability of benefits for total disability more restrictive. Third, it made relevant an analysis of the realistic effect on earning capacity.
There have been few judicial interpretations of the new law. Our brethren of the First Circuit Court of Appeal held in LeBlanc v. Commercial Union Assurance Company, 349 So.2d 1283 (La.App. 1 Cir. 1977), that partial disability includes a situation where an employee is unable to resume his former employment only because it involves working conditions hazardous to his health or welfare. The court found support for its holding in our firmly established jurisprudence that the workmen's compensation law is to be liberally construed to the end that its coverage will be extended to injured workmen to relieve them of the crushing economic burden of work-connected injuries by spreading such loss in the channels of commerce and industry. Also, it held that where the partially disabled worker actually *943 earns income subsequent to the disabling injury, that amount must be deducted from the statutory compensation benefits. Thus, where the employee has subsequently earned wages equal to or greater than those earned at the time of injury, he is entitled to no compensation during the period such equal or greater wages are earned. It is clear that the court considered the economic and humanitarian purposes of the law in making its decision.
We first considered the effects of the 1975 amendment in Phillips v. Dresser Engineering Company, 351 So.2d 304 (La.App. 3 Cir. 1977). We upheld the trial court's holding that the legislature had no intention of requiring an injured worker who has not fully recovered from the injury to find employment and work in substantial pain. Thus, we recognized the inherent intent of the legislature to exclude an injured worker from total disability compensation only when he may reasonably engage in any gainful occupation.
In Kilbourne v. Armstrong, 351 So.2d 802 (La.App. 1 Cir. 1977), the First Circuit Court of Appeal again addressed the 1975 amendment. There the employee lost the use of his right hand. He had no technical training and only a third grade education. The plaintiff's counsel argued that because of these facts, there were very few jobs which the plaintiff was capable of performing. The court adopted the finding of the LeBlanc panel that the definition of partial disability was the disability to perform his usual or customary occupation, "but can engage in some other gainful employment for which he is fitted by education, training, or experience". Considering the plaintiff's admission that some jobs were available to him, our brethren, we think, correctly held that the plaintiff was only partially disabled. We agree with their interpretation of the new definition of partial disability. We find, however, that the facts of Kilbourne are distinguishable from the instant case.
In Cullivan v. Fish Engineering and Construction Company, Inc., 354 So.2d 597 (La. App. 3 Cir., 1977), we upheld the trial court's holding that the plaintiff, who suffered from a back injury, was permanently and totally disabled. There was testimony by an expert that there were light jobs available in Louisiana which the plaintiff could perform. Another witness, a physician, said that he recommended a return to the plaintiff's former occupation. The primary treating physician, however, indicated that the plaintiff was unable to perform the duties of those jobs, and the trial court gave more weight to his testimony which was buttressed by another physician's testimony. We held there was sufficient evidence to establish that the plaintiff was unable "to engage in any gainful occupation for wages". LSA-R.S. 23:1221(2).
Recently, we re-affirmed our decision in Phillips, supra, that a worker is totally disabled if he is unable to pursue any gainful employment without experiencing substantial pain. Rachal v. Highlands Insurance Company, 355 So.2d 1355 (La.App. 3 Cir. 1978).
In the instant case, the testimony of the physician is that the plaintiff is able to return to light work. The trial court held that this is the only factor to be considered and thus the plaintiff had not established that he has a permanent total disability but that he had proven that he was partially disabled. The trial court committed reversible error in so holding.
It is undisputed that the plaintiff is illiterate and has no training or experience for the type of work which he is now physically able to perform. Given our agreement with the decision of the First Circuit as to the definition of partial disability, it is clear that he is unable "to engage in some other gainful employment for which he is suited by education, training, or experience", by virtue of his lack of education, training, or experience. Yet it would be illogical to hold that the plaintiff is entitled to no compensation given our prima facie conclusion that he suffered a compensable injury.
The underlying principle in the decisions discussed above is that the workmen's compensation law will be interpreted in a manner which takes into account the reasonableness *944 of requiring the disabled worker to return to employment, and the realistic earning capacity of the disabled worker. This was the primary intent of the legislature. Thus, when an employee can only work in substantial pain or at substantial risk to his health, our courts have held the worker entitled to either total disability compensation, Phillips and Rachal, supra, or partial disability compensation, LeBlanc, supra. Where the evidence indicates that the disabled worker has a realistic earning capacity by engaging in some gainful occupation, although not his former occupation for which he is suited by education, training, or experience, then he will be considered only partially disabled, Kilbourne, supra. If the evidence indicates that the employee is unable to engage in any gainful occupation, then the worker is entitled to total disability compensation, Cullivan, supra.
We conclude that the plaintiff is unable to engage in any gainful occupation. Unlike Kilbourne, the plaintiff has made no admission that there is work which he could perform. On the contrary, he has steadfastly contended that he is unable to engage in any gainful occupation. The testimony indicates that from a solely medical prospective the plaintiff could engage in some light jobs. The workmen's compensation law, however, is not based solely on a medical prospective. To do so would return us to the evil which the 1975 Legislature intended to eliminate by bringing into focus the reasonable earning capacity of the worker subsequent to the injury. The plaintiff has no reasonable ability to engage in any gainful occupation, in his physical condition. This is consistent with the legislative intent to bring into focus the economic realities of the situation. We make our decision without considering the plaintiff's education, training, or experience, but we note that the legislature was restrictive in the language it used in the 1975 amendment relating thereto. The amendment states:
"whether or not an occupation for which the employee, at the time of the injury was particularly fitted by reason of education, training, and experience." (Emphasis ours.)
Clearly, the inference is that if the employee could become qualified for an occupation by a reasonable degree of further education, training, or experience, then the lack of the particular education, training, or experience which is required is irrelevant. Conversely, we believe that the legislature intended that where an employee would become fit for any gainful occupation only by an unreasonable degree of further education, training, or experience, the extreme lack of education, training, or experience would be relevant to our analysis. As noted, however, we find that in the instant case, the plaintiff has no reasonable ability to engage in any gainful occupation based on his physical condition, without regard to his illiteracy and lack of training or experience.
PENALTIES AND ATTORNEY'S FEES
The trial court denied plaintiff penalties and attorney's fees which are authorized by LSA-R.S. 23:1201.2 where the employer arbitrarily, capriciously, or without just cause, fails to pay or discontinues payment of benefits.
The reason given by the trial court was that medical reports presented to the defendant insurer did not indicate that the plaintiff's heart problems were job-related. Furthermore, the plaintiff's written statement does not suggest that he had an "accident" while working for his employer, according to the trial court. We disagree, and find the trial court was manifestly erroneous.
The plaintiff's signed statement of April 1, 1976, indicates that Dr. Smith advised him that his pains were due to a heart attack which he had suffered. He informed his employer of this, and the employer indicated that he would turn in an injury report.
The insurance claims adjuster received a medical report from Dr. B. M. Woodard dated December 15, 1976. Dr. Woodard's report states the plaintiff gave the facts *945 surrounding his accident on December 31, 1975, and that the physician who treated him the day following the "accident" later indicated that he had suffered a heart attack. Dr. Woodard's report concludes that the pain experienced by the plaintiff at the time of his examination of the plaintiff was "obviously the result of an anginal-type pain". There was no direct contradiction of the plaintiff's statement that he suffered a heart attack on December 31, 1975.
Clearly, this information strongly suggests "an accident" had occurred, especially when considering the nature of the plaintiff's work. Where the employee presents evidence of an accident and a following disability without any intervening cause, it is presumed that the accident caused the disability. Bertrand v. Coal Operators Casualty Co., supra.
Furthermore, the defendant-appellee states that the termination of benefits was based on Dr. Woodard's opinion that the plaintiff could return to some type of gainful employment. We agree that this case presented a difficult issue of the degree of the plaintiff's disability under the new law. The insurer, however, acted capriciously in completely terminating benefits since the evidence it had at the time clearly was insufficient to allow it to terminate benefits entirely. Had the insurer reduced the benefits consistent with the medical opinion that the plaintiff could return to light work, we might have reached a different conclusion. We feel that prior to stopping compensation payments under the facts of this case, it became incumbent upon the insurer to make a further investigation. Therefore, we find manifest error in the failure of the trial court to award penalties and attorney's fees. We think that attorney's fees in the amount of $4,000.00 should be awarded along with the statutory penalty of 12% of all past-due benefits until paid.
The trial court allowed plaintiff to recover payment of one medical bill in the amount of $152.50, and certain costs were assessed against the defendant. We affirm that part of the trial court decision.
For the above reasons, we hereby reverse that portion of the trial court judgment which failed to find that the plaintiff was permanently and totally disabled within the meaning of the compensation act, and do hereby order, adjudge and decree that plaintiff herein is entitled to workmen's compensation benefits for permanent and total disability at the rate of 662/3% of his wages for as long as the said disability shall continue. We further reverse the trial court judgment denying penalties and attorney fees, and we hereby award attorney fees in the amount of $4,000.00, plus the statutory penalty of 12% per annum on all past-due workmen's compensation benefits, until paid.
In all other respects, we affirm the judgment of the trial court.
All costs of this appeal are assessed against the defendants.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
WATSON, J., concurs in the result, but would favor a remand for evidence on plaintiff's employment capabilities and possibilities.
CULPEPPER and DOMENGEAUX, JJ., dissents in part and concurs in part and will assign written reasons.
CULPEPPER, Judge, concurring in part and dissenting in part
I concur in the majority holding that, under the rule stated in Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1968), the work-related angina attack was a compensable accident. I also concur in he holing that plaintiff is entitled to penalties and attorney's fees, since the insurer terminated all workmen's compensation benefits at a time when all of the expert medical reports in its files showed that plaintiff was partially disabled. The insurer contends it acted reasonably in terminating benefits because there was a bona fide issue as to whether the angina attack constituted a compensable accident. However, the insurer is presumed to have known the holding in the Bertrand case, *946 and, under that case, there was not a serious issue as to a compensable accident.
I dissent from the majority holding that under the 1975 Amendment to our Workmen's Compensation Act the plaintiff is permanently and totally disabled. I agree with the trial judge that plaintiff is only partially disabled.
There is no dispute as to the facts. I agree with those stated in the majority opinion. I would add the unanimous expert medical opinion that plaintiff suffered no infarct or other heart damage as a result of this attack of angina. The EKGs were normal and plaintiff refused a stress test. On the basis of the history, the doctors agree that plaintiff had preexisting coronary arteriosclerosis, which, over a period of years, progressed until plaintiff had the angina attack at issue here while engaging in strenuous physical labor. As a result of that attack, the doctors now know that plaintiff has heart disease and should no longer engage in the strenuous physical labor required of a logger. However, all of the doctors state that plaintiff is physically able to perform light work not requiring strenuous physical activity. There is no testimony from the doctors that light work would cause plaintiff pain or be harmful to his health. For instance, Dr. Smith, the original treating physician, testified in his deposition:
"Q Knowing what you know of Mr. Ashworth's present physical condition would you be of the opinion that he could perform some type sedentary work, clerical work, operating a cash register?
MR. BAGGETT: You're talking about from a physical standpoint as opposed to a training standpoint, educational standpoint.
MR. CAPPEL: From a physical standpoint.
Q From a physical standpoint, Doctor.
A Omitting his educational level?
Q Yes. Strictly . . .
A Could he do some very light work?
Q Yes, sir.
A Yes, sir, I believe he could.
Q He could clerk in a department store or a grocery store or do some type of desk job?
A Yes, sir.
Q Without danger to his health?
A Yes, sir, I believe so."
Dr. Woodard stated in his report to the insurer dated December 15, 1976:
"However, since Dr. Frederick ruled out the possibility of any kidney disease, the pains he is now having, are obviously the result of an anginal type pain. Since this man refused the stress test, it is rather difficult to evaluate the heart condition as to whether he could return to his previous type work without any doubt. I do believe however, that it is possible for him to be productive in any type of work that does not require such exertion as logging possibly requires."
Dr. Buttross stated in his report to the insurer of date, May 16, 1977:
"The patient failed to keep the appointment for the stress test and I have not seen this individual since 6/18/76.
"I do not think that coronary heart disease that this patient has was in any way caused by strenuous work activities. Certainly, significant physical activity can precipitate angina pectoris and in some cases if strenuous activity is continued in spite of the warning sign of angina pectoris it could lead to a myocardial infarction. In this man's situation, there was no history of any prolonged chest pain or any other finding to indicate a myocardial infarction."
It is my view that the trial judge correctly applied to the above facts the 1975 Amendment to our Workmen's Compensation Act. In his written reasons, the trial judge stated:
"Under R.S. 23:1221, as amended, an employee is totally disabled only when he is unable `to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at *947 the time of injury, was particularly fitted by reason of education, training, and experience.' (Emphasis added) There is no ambiguity in that language and this Court has to assume that the Legislature deliberately chose those words to express its intention as to what conditions and circumstances constitute total disability so as to entitle an injured employee to the increased weekly compensation benefits for the entire duration of the disability. It appears obvious that the language used by the Legislature was intended to overrule the jurisprudential definition of total disability. This must be true because there is no way that the language of the amendment can be squared with that jurisprudence. Therefore, this Court concludes that the legislative amendment redefining total disability means what is says.
"Plaintiff has not established that he has permanent total disability as now defined by the compensation law. He is not physically unable `to engage in any gainful occupation for wages.' The doctors agree that he has the physical ability to return to light work. He may not have the education, training or experience for the type of work that he is now physically capable to perform, but that is of no moment under the amended statute."
The majority holds the trial judge erred in failing to consider plaintiff's "education, training and experience" at the time of injury, in deciding whether plaintiff is disabled "to engage in any gainful occupation for wages". The majority says we must consider the employee's education, training and experience at the time of injury, and, if it would require "an unreasonable degree of further education, training or experience" for plaintiff to be able to engage in any gainful occupation for wages, he is totally and permanently disabled.
In my view, the majority has held the exact opposite of what the statute clearly says. The statute defines permanent, total disability as disability to engage in any gainful occupation for wages "whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training and experience." The majority has, in effect, deleted from the statute the above underlined portion, and has, in effect, added to the statute a provision "that plaintiff is permanently and totally disabled only where the employee could become qualified for an occupation by a reasonable degree of further education, training or experience." The majority holds that if "an unreasonable degree of further education, training, or experience" is required for the employee to engage in any gainful occupation for wages, then he is not permanently and totally disabled. In my view, the majority has, by judicial legislation, changed the statute completely.
On the other hand, the new statutory definition of partial disability fits the facts of the present case as a glove. The 1975 Amendment defines partial disability as follows:
"(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted by education, training and experience. . . ."

Thus, the definition of partial disability, unlike the definition of permanent, total disability, provides that the education, training and experience of the employee at the time of injury is considered. In the present case, if we consider the fact that, at the time of injury, plaintiff had no work experience except logging, he is partially disabled, because he cannot perform the logging work he was doing at the time of the accident.
In the Comment, 1975 Amendments to the Louisiana Workmen's Compensation Act, 36 La.L.Rev. 1018, the author explains the new definitions of total and of partial disability as follows:
"When the amended definitions of partial and total disability are read together, the concept envisioned seems to be that if an injured worker can engage in any gainful employment, he will not be considered `totally disabled.' However, if he is unable *948 to return to the work in which he was customarily engaged at the time of the accident, or work of a similar nature, he will be considered partially disabled, and entitled to the difference between the wages he is actually earning at present, and those which he was earning at the time of the accident. The intent of these changes is to increase the use of partial disability benefits and restrict the availability of total disability benefits to those cases in which an injured workman is incapable of earning any wages."
It is noteworthy that the author of the Law Review Comment finds no ambiguity or uncertainty in the definition of total disability or of partial disability. I agree. When a statute is clear and free of ambiguity, the courts should not disregard the letter of it, under the pretext of pursuing its spirit. LSA-C.C. Article 13.
Under the evidence in the present case, the plaintiff is able to engage in gainful employment for wages. All of the expert medical witnesses testified plaintiff is physically able to perform any kind of work which does not require strenuous physical activity. Although the evidence does not go into detail as to all of the kinds of jobs plaintiff can perform, there are many types of work which do not require strenuous physical activity. For instance, plaintiff could drive a truck, drive a farm tractor, work in a service station, operate many types of machines and mechanical equipment, work as a janitor or watchman, etc. Of course, plaintiff may require additional education or training to perform some of these types of work. However, this is contemplated by the new statutory definition of partial disability, which provides that benefits must be paid until, and even after, plaintiff is earning wages.
For the reasons assigned, I concur in part and dissent in part.
DOMENGEAUX, Judge, concurring in part and dissenting in part.
I concur with the majority's holding that the work related angina attack was a compensable accident, and also with the holding that plaintiff is entitled to penalties and attorney's fees.
I dissent from the majority's holding that plaintiff is permanently disabled for the reasons set forth in Judge Culpepper's concurring and dissenting opinion. However, inasmuch as I was a member of the panel in Phillips v. Dresser Engineering Company, and authored the opinion in Rachal v. Highlands Insurance Company, both cited by the majority, I wish to add a few explanatory remarks.
Both Phillips and Rachal involved factual situations where the employees would suffer substantial pain if they engaged in gainful employment. In those two cases, we, in effect, held that substantial pain, in and of itself, will constitute total disability under the amended compensation statute.
In this case there is no indication that the employee is experiencing substantial pain. Although his heart condition does not permit employment in his former occupation, the medical evidence clearly indicates that he could safely engage in some gainful employment. This factual setting, as stated by Judge Culpepper, falls squarely within the compensation statute governing partial disability. Phillips and Rachal are clearly distinguishable on their facts from the case presently before the court.