SARTAIN, Judge.
This is an appeal by St. Paul Fire & Marine Insurance Company (St. Paul), the workmen’s compensation insurer of Dr. T. R. Kilpatrick, Jr., plaintiff’s employer. St. Paul appeals from a judgment awarding plaintiff compensation for total and permanent disability resulting from accidental injuries sustained by her on May 21, 1969, when she was engaged in the position of Office Nurse. Plaintiff has answered the appeal claiming that the trial judge erred in not awarding her penalties, interest and attorney’s fees following the alleged arbitrary and capricious discontinuation of compensation benefits after forty-two weeks. We affirm.
The hazardous nature of plaintiff’s employment, the occurrence of an accident arising within the course and scope of her employment, and the payment of benefits to plaintiff at the rate of $45.00 per week for forty-two weeks are all conceded. In addition, defendant expended on behalf of plaintiff the sum of $1,156.22, representing $906.22 for medical expenses, and $250.00 for the services of a maid to assist the plaintiff during the period of her initial disability.
St. Paul urges that the plaintiff has failed to bear the burden of proving a causal relation between the accident of May 21, 1969, and the injury complained of following the forty-two weeks of disability.
Following the accident, plaintiff was first seen by Dr. Kenneth Cranor. The length, nature and results of Dr. Cranor’s treatment of the plaintiff are not included in the record because, though present in court, Dr. Cranor was not called as a witness.
Dr. R. B. Means, an orthopedic surgeon, first saw plaintiff on January 29, 1970, and opined that she had “suffered a back sprain with damage to the fifth lumbar disc, a herniation of the fifth lumbar disc.” He again saw her on February 2, 1970, whereupon he admitted her to the Baton Rouge General Hospital and prescribed medication, pelvic traction and physiotherapy. She was released from the hospital February 13, 1970. On March 11, 1970, he advised St. Paul as follows :
“This patient was initially seen by me in the office on 1/29/70, relating a history of having injured her back on 5/21/69. (A copy of the history and physical from the hospital was mailed to you on 3/10/70) which summarizes the history and the findings. It appeared that the patient was most likely suffering from a herniation of a lower lumbar disc. She was treated in the hospital by medication and physical therapy and responded well. She was released from *699 the hospital on 2/13/70 and advised to continue postural exercises and a program of limited physical activity for about six additional weeks.
“It appears that she will make a satisfactory recovery and I do not plan to see her again unless she, fails to do so.”
Defendant frankly admits that on the basis of the report it discontinued the payment of weekly compensation benefits to the plaintiff.
On March 13, 1970, Dr. Means examined the plaintiff at his office. She complained of pain radiating to the lower extremity. Physical examination failed to disclose objective symptoms to support plaintiffs complaints. However, he stated that her complaints were medically consistent with the injury she is alleged to have sustained on May 21, 1969.
Dr. Means next saw plaintiff on May 25, 1971, and he again recommended that she be readmitted to the hospital. Plaintiff preferred to remain at home and Dr. Means prescribed medication for pain, a series of physiotherapy treatments, and traction and saw plaintiff for the following two weeks for out patient treatment. On June 4, 1971, based on his findings of May 25, 1971, Dr. Means was of the opinion that plaintiff was totally disabled from performing the duties required of her by Dr. Kilpatrick. This case was heard on the merits on June 8, 1971.
Dr. Means, while admitting that subjective complaints are directly related to the sincerity of the complainant, was of the opinion that plaintiff was a truthful and sincere patient and that he believed her complaints of pain and discomfort.
Dr. John D. Jackson, a neurosurgeon with Ochsner Clinic, New Orleans, Louisiana, performed a neurological examination of the plaintiff and could discern no objective neurological findings to support her complaints. Again, he asserted that in his opinion plaintiff impressed him as being a most sincere and truthful individual and he had absolutely no reason to doubt her statements as to her continued complaint of pain and discomfort in the lumbar region.
St. Paul strenuously urges that the failure of the plaintiff to call her initial treating physician, Dr. Cranor, creates a strong presumption that his testimony would be negative to her cause and that there is a serious “gap” in the chronology of events commencing with the injury of May 21, 1969, and her first visit to Dr. Means oh January 29, 1970. This position is well taken. Plaintiff testified that she initially consulted Dr. Cranor and the record is devoid of any testimony by her or others as to how long he treated her and what his diagnosis of her was except for the statement by Dr. Means that he had received Dr. Cranor’s report which diagnosed her condition as a lumbar sprain resulting in a four percent disability. We do not find merit in plaintiff’s argument that Dr. Cra-nor’s presence in the courtroom during the course of the hearing made him available to the defense and that no adverse inference should be imposed upon either party.
 The law is well settled that the burden of proof rests with the plaintiff in a compensation suit as in any other and that it is essential that plaintiff prove her case by a preponderance of the evidence. Failure to call Dr. Cranor does in fact create a presumption that his testimony would have been unfavorable to her cause. Blue v. Kinney Co., 256 So.2d 145 (La.App. 3rd Cir., 1971); Scroggins v. Fishing Tools, Inc., 236 So.2d 505 (La.App. 4th Cir., 1970); and Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3rd Cir., 1970).
In his written reasons for judgment the trial judge stated:
“While the evidence is not so strong as to be overwhelming and there are unexplained gaps in the history of the case the court finds that the plaintiff is totally and permanently disabled.”
*700 Plaintiff testified that from the date of the accident until the date of the trial she had continually experienced difficulty and was extremely limited in her activities. She could only ride in an automobile for short periods of time and could not stoop, bend or pick up heavy objects.
This testimony, coupled with the fact that St. Paul readily admitted that it considered plaintiff disabled for the initial forty-two weeks for which it paid compensation benefits, strengthened by the positive statements of the two experts who testified as to their belief in plaintiff’s sincerity, overcomes the adverse presumption created by the failure of plaintiff to call Dr. Cranor.
Further, the trial judge, who had the opportunity to observe the plaintiff and evaluate her testimony, was undoubtedly of the same opinion and we are not in a position to say nor do we desire to hold that he committed manifest error in his determination that plaintiff had satisfied the burden of proof.
With respect to the extent of plaintiff’s disability the record fully supports the conclusion that she is unable to perform the work previously required of her which included the assisting of patients on and off the examination table, the lifting of objects of moderate weight, and the frequent visits to the hospital for the purpose of taking electrocardiograms of her employer’s patients.
We now turn to the plaintiff’s answer to this appeal wherein she seeks the imposition of statutory penalties, interest and attorney’s fees for the alleged arbitrary and capricious action on the part of St. Paul in terminating plaintiff’s compensation benefits as of March 11, 1971. The trial judge held that the advance of $255.00 by St. Paul to plaintiff to help defray the expenses of a maid for herself and day nursery care for her daughter were benefits over and above those required by law and he gave credit therefor to the defendant as compensation for five and two-thirds additional weeks, thus covering the six week recupatory period evidenced in Dr. Means’ letter of March 11, 1971, quoted above. Further, in consideration of the subjective nature of plaintiff’s complaints we cannot say that the defendant acted arbitrarily in discontinuing compensation benefits. The trial judge so held and we concur.
Accordingly, for the above and foregoing reasons, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.