354 So.2d 597 (1977)
Ephriam CULLIVAN, Jr., Plaintiff-Appellee,
v.
FISH ENGINEERING AND CONSTRUCTION COMPANY, INC., et al., Defendants-Appellants.
No. 6326.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1977.
*598 J. Louis Gibbens, New Iberia, for defendants-appellants.
Morrow & Morrow, J. Michael Morrow, Opelousas, for plaintiff-appellee.
Before DOMENGEAUX, WATSON and JOHNSON, JJ.
WATSON, Judge.
This is a workmen's compensation case. The trial court found plaintiff, Ephriam Cullivan, Jr., to be totally and permanently disabled as the result of an accident on January 23, 1976, and awarded penalties and attorney's fees. Defendants, Fish Engineering and Construction Company, Inc., the employer, and its insurer, Employers National Insurance Company, have appealed. Plaintiff has answered the appeal, asking that the attorney's fees of $2,750 be increased to $7,500.
Defendants contend that the trial court erred in giving judgment for expert witness fees and the cost of depositions when these items were not mentioned in the written reasons for judgment. There is no merit to this contention. The trial court was within its discretion in fixing these expenses as court costs and assessing them to defendants. LSA-R.S. 23:1317; Tyler v. Owens Illinois, Inc., 289 So.2d 893 (La.App. 4 Cir. 1974). Written reasons for judgment form no part of the judgment itself. See Smith v. Dendinger, 349 So.2d 907 (La.App. 1 Cir. 1977) and Hebert v. Hebert, 351 So.2d 1199 (La., 1977).
*599 The other issues are: whether plaintiff proved a causal connection between the accident and his disability; whether plaintiff is totally and permanently disabled within the meaning of LSA-R.S. 23:1221, as amended in 1975; whether the trial court correctly awarded penalties and attorney's fees; and whether there should be an increase in the amount awarded as attorney's fees.
Plaintiff Cullivan was working as a carpenter 48 hours a week. He had been a carpenter 16 years without suffering an injury. It is undisputed that he suffered an accident in the course and scope of his employment, when he experienced pain in his side and back as he picked up a heavy barrel of sand. Cullivan was paid weekly compensation benefits totaling $3,740. Payments of $85 per week were discontinued on November 25, 1976. Defendants paid medical expenses totaling $5,167.13.[1] Other medical expenses: $911.25 at the Ville Platte General Hospital; $698 at the Tassin Clinic Pharmacy; $403.50 at the Eastin Pharmacy; and $663 from Dr. John Tassin, were not paid. Rita Aucoin, Credit Collection Clerk at Ville Platte General Hospital, testified that she had sent the unpaid hospital bill to the insurer several times and had also sent a breakdown of the drug charges at the request of the insurer. Payment had not been made, although responsibility for the bills had not been denied. Dr. John Tassin testified that all of the unpaid expenses related to Cullivan's accident. Most of them were incurred prior to the time that compensation payments were stopped.
Cullivan testified that the accident occurred on a Friday. An appointment was made for him to see a doctor in Morgan City on Monday. According to Cullivan, this physician said Cullivan should see his family doctor for surgical treatment of a hernia in the left side and a ruptured disc in his back. Cullivan then went to his home in Ville Platte where he saw Dr. John Tassin on Tuesday. Cullivan testified that he has been unemployed since the accident and is physically unable to work. He has been on a diet but has not lost weight. Because his brother had a poor result from back surgery, Cullivan was reluctant to have such an operation himself. Cullivan, aged 36, said he is both older and heavier than his brother.
Dr. Tassin testified as an expert in the field of general practice. Dr. Tassin saw Cullivan on January 27, 1976, and referred him to Dr. Daniel Buller for surgical repair of a left inguinal hernia. Dr. Tassin assisted in the surgery and has continued to see Cullivan every two weeks since then. Because Cullivan is obese, weighing some 300 pounds, the surgery was not the "Anderson McVey" (TR. 359) type, which allows return to heavy work, but a more superficial repair. According to Dr. Tassin, Cullivan definitely had muscle spasms in his back, in addition to the hernia. Cullivan continued to have low back pain radiating into the left leg and weakness in that leg, and Dr. Tassin referred him to a neurosurgeon, Dr. Charles A. Borne. Dr. Tassin agreed with Dr. Borne's diagnosis of a ruptured disc. Cullivan has also suffered from hemorrhoids, impotence, proctitis and constipation, which Tassin testified could be related to his back problem, since one of the symptoms of a disc injury is difficulty with the nerves leading to the rectum and sphincter. Dr. Tassin considered surgery for the hemorrhoids but continued conservative treatment because Cullivan is not a good candidate for surgery. Dr. Tassin treated Cullivan for these incidental complaints and hospitalized him from August 4, 1976, through August 13. Cullivan was put on complete bed rest with a 1,000 calorie diet, pelvic traction and physical therapy. The combination resulted in some symptomatic improvement but no loss of weight. Dr. Tassin last saw Cullivan shortly before trial on February 1, 1977. At that time Cullivan's complaints remained the same and, according to Dr. Tassin, have been consistent throughout his treatment. Dr. Tassin believed *600 Cullivan to be truthful and not a malingerer. Since the only purpose of a myelogram is diagnostic, such a procedure would be worthless if Cullivan were not planning to have surgery for his back. Dr. Tassin testified that, aside from the back problem a return to heavy labor would probably cause Cullivan to suffer a recurrence of his hernia. Cullivan is unable to do any type of lifting, prolonged standing or prolonged sitting. He should not walk or drive on a regular basis and Dr. Tassin felt that he would find it difficult if not impossible to find work. Any minor stress could aggravate his pain. Even with surgery, Tassin felt the possibility of Cullivan returning to employment was not good, since Cullivan will probably develop degenerative arthritic disease within a year. Cullivan belongs to a family of large people and is a big man in addition to being obese.
Dr. Daniel H. Buller of Opelousas testified as an expert in the field of general surgery. Dr. Buller saw Cullivan on January 27, 1976, and subsequently did a successful surgical repair of a left inguinal hernia. Dr. Buller discharged Cullivan on August 20, 1976, fully recovered from the hernia but with a likelihood of a recurrence. Cullivan complained of back pain and had significant back symptoms during the course of Buller's treatment. During the post-operative period, Cullivan developed an inflammation of the epididymis, which is usually caused by a urinary tract infection. Dr. Buller testified that Cullivan's back trouble might have aggravated his bladder, caused urinary retention, and contributed to the infection. The hernia surgery, although perhaps a contributing cause, was probably not the primary cause of the epididymitis. Dr. Buller referred Cullivan to Dr. Joseph Frazer Gaar, an orthopedic surgeon, because of the possibility of a ruptured disc.
Dr. Gaar testified in deposition that he saw Cullivan on March 22, 1976. His report to Dr. Buller stated:
". . . seemed to be lumbar paraspinous muscle spasm present, . . ." (TR. 157).
Dr. Gaar said that Cullivan's large size made it difficult to assess the condition of his back, which x-rays showed to be within normal limits for his age. Cullivan was referred to Dr. Gaar again on May 12, approximately two months later, and this report states:
"Again, I cannot detect definite lumbar paraspinous muscle spasm due to his large size." (TR. 153).
Cullivan was deemed a poor candidate for surgery. Although Dr. Gaar could not make a definite diagnosis, he recommended that Cullivan continue under observation for a possible disc injury. Dr. Gaar said it would not be good practice for a patient to have a myelogram, if he were unwilling to have a laminectomy.
Dr. Charles A. Borne, a neurosurgeon in Lake Charles, examined Cullivan twice on referral from Dr. Tassin. His first examination, on May 5, 1976, indicated the possibility of a herniated or ruptured disc at the L-3, L-4 level. Dr. Borne detected muscle spasms. Later, on July 1, 1976, he found a sensory decrease on the left side and an almost complete absence of knee reflex. Dr. Borne recommended a myelogram and possible surgery for lumbar disc disease. However, Dr. Borne testified that Cullivan was not a good candidate for a laminectomy because of his size. Dr. Borne said that Cullivan was not able to return to any type of work at the time of his examinations (TR. 46). Dr. Borne found it highly unlikely Cullivan could return to manual labor even if he had surgery. In his opinion, weight loss and surgery would give Cullivan only a 50% possibility of returning to manual labor. Dr. Borne was convinced that Cullivan had a disc injury and testified that a negative myelogram would not change his diagnosis since a myelogram is only 85% accurate. A desirable weight for Cullivan would be 200 pounds but losing 100 pounds would take a year or more.
Dr. Carl F. Culicchia, a physician in Marrero, testified in deposition as an expert in neurological surgery. He examined Cullivan on September 28, 1976, and concluded that Cullivan probably did not have a neurological *601 injury or disease. Dr. Culicchia suggested a myelogram to confirm his diagnosis. Arrangements were made for this procedure but Cullivan decided not to have it done. Cullivan said he made this decision after consulting with Dr. Tassin. Dr. Culicchia stated that Cullivan's weight would not be a problem in performing the myelogram. Dr. Culicchia said he recommended a return to Cullivan's former occupation, but any report he may have made to the employer or insurer to that effect is not in evidence. There was no testimony as to why compensation payments were discontinued.
Dr. George Hearn, head of the psychology department at Louisiana College in Pineville, testified in deposition as an expert in the field of vocational evaluation and rehabilitation. Dr. Hearn did not examine Cullivan but testified that there were various light duty jobs available in Louisiana which he felt Cullivan could perform. These included truck and school bus driving; guard, watchman and service station positions; and other jobs requiring vocational training. The trial court stated in written reasons for judgment that it gave little weight to Dr. Hearn's testimony, pointing out that Dr. Tassin, the primary treating physician, indicated Cullivan is unable to perform the duties of these jobs.
There is no manifest error in the trial court's conclusions that plaintiff's accident resulted in total and permanent disability and that he cannot work because of that disability. The evidence establishes that Cullivan is unable "to engage in any gainful occupation for wages", LSA-R.S. 23:1221(2). The contention of defendants that Cullivan is not disabled within that definition is unsupported by the record. Dr. Borne testified that Cullivan was unable to do any type of work at the time of his examinations and Dr. Tassin, who has had Cullivan under continuous observation, said his condition had not improved. The only testimony to the contrary was that of Dr. Culicchia, who saw Cullivan only once, did not treat him and suggested a myelogram as a check on his diagnosis.
Cullivan's reluctance to have surgery is justified by the fact that both Drs. Tassin and Borne agree he is a poor surgical risk at the present time. See Bass v. Service Pipe Trucking Company, Inc., 289 So.2d 78 (La., 1974).
The trial court's conclusion that the failure to continue Cullivan's benefits was arbitrary, capricious and without probable cause is partially a factual determination and should not be disturbed in the absence of manifest error. Dr. Culicchia's opinion, if communicated to the insurer, might have given a sufficient pretext for discontinuing payment of Cullivan's compensation. However, there is no testimony in the record as to why the compensation was discontinued, and as noted above, there is no medical report from this doctor in the record. Additionally, the record affords no excuse for failure to pay the additional medical expenses which were clearly due and owing. Roberie v. Ashy Construction Company, 215 So.2d 857 (La.App. 3 Cir. 1968) writ denied 253 La. 323, 217 So.2d 414 (1969). The trial court correctly awarded penalties and attorney's fees. Compare Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La., 1977).
The attorney's fee awarded plaintiff's counsel is within the discretion of the trial court, but an increase in the attorney's fee for services on appeal is warranted. Payne v. Travelers Insurance Company, 299 So.2d 913 (La.App. 3 Cir. 1974). The sum of $500 will be awarded as additional attorney's fees.
For the foregoing reasons, it is ordered that the judgment of the trial court herein be amended to award an additional $500 as attorney's fees, and, as amended, the judgment of the trial court is affirmed. All costs are taxed against defendants-appellants.
AMENDED AND AFFIRMED.
NOTES
[1] This is the figure in the minutes (TR. 1) and the stipulation of counsel (TR. 328). The figure of $5,117.13 in the reasons for judgment (TR. 26) is apparently a typographical error.