CHEHARDY, Judge.
This is a workmen’s compensation case wherein Kenneth Goodwin sues his employer, Steve Stathes, and his insurer, Employers Casualty Company,[1] for injuries he sustained on August 2, 1976 while he was performing his employment duties.
Judgment was rendered by the trial court in favor of the plaintiff and against the defendants individually and in solido in the amount of $85 per week for a period of 400 weeks, subject to any credits allowed the defendants under LSA-R.S. 23:1221(3). It was also ordered that the defendants pay the plaintiff an amount of money equal to the medical expenses incurred by him as a result of the August 2, 1976 injury; however, the plaintiff’s request for attorney fees under LSA-R.S. 23:1141 were denied.
In his reasons for judgment, the trial court judge stated that he found the plaintiff to be “partially disabled” under LSA-R.S. 23:1221(3).
Plaintiff on appeal asks that judgment be increased from “partial” to “total and permanent” disability, for costs of the proceedings, expert fees, and costs of this appeal. Defendants have answered the appeal, asking that the judgment of the trial court be reduced from 400 to 100 weeks.
On August 2, 1976, Goodwin was employed by Stathes and, while attempting to lift a sandbag weighing in excess of 100 pounds he suffered an injury to his lower back. Plaintiff subsequently underwent a surgical procedure called a fusion and has not been employed since the accident.
Dr. Walter Brent, a board certified orthopedist, testified that he did the fusion on the plaintiff’s back on November 29, 1976, and continued to see the plaintiff until December 18, 1978. At that time plaintiff had approximately a 15% to 20% partial permanent disability of the body as a whole. Dr. Brent advised Goodwin that he could not return to heavy work nor could he do any work that would require lifting more than 25 pounds, squatting, heavy climbing or overhead type of work. Dr. Brent also said interior house painting requiring the use of a ladder and overhead work would cause Goodwin substantial pain and would probably “lay him up” afterward; nor did he feel plaintiff could stand or sit all day but would have to have a job where he could alternate sitting and standing. The reason for these recommendations, the doctor said, was that the plaintiff did have objective findings of pain during examinations following increased activities.
Plaintiff was a painter and sandblaster and was usually required to climb ladders to various heights, carrying bags of sand weighing up to 100 pounds and cans of paint weighing sometimes 50 pounds. This is the only type of work Goodwin had ever done and although he had had a similar back injury 13 years ago, he subsequently returned to his work until the August 2, 1976 accident. Plaintiff cannot read or write, can spell only a few three-letter words, can add with some difficulty, does not know the minus sign, cannot multiply or divide, cannot read street signs or maps, and can only drive somewhere if he has been shown the way.
Regarding plaintiff’s physical condition, we note that he cannot stand nor sit for long periods of time without experiencing substantial pain. He cannot run and could not apprehend another person without hurting himself. He admitted he had not tried to get another job since his injury, but said that it was because he did not know what *1329 kind of job he could possibly do. From the testimony it appears that Dr. Brent and the therapists, although acknowledging the possibility of his doing some light job, really were in a dilemma, because of his educational and physical limitations, as to just what job Kenneth Goodwin could perform sufficiently to earn a living.
■ Susan Smith, an expert in occupational therapy and vocational evaluation, tested the plaintiff extensively in the areas of walking, climbing, stooping and manual dexterity as these activities would relate to the performance of occupations. We refrain from a detailed explanation of each test she performed and its specific findings; however, she did not consider him fit for work then available such as engraving, lens grinding or repairing guns because of his inability to sit all day. She said his illiteracy would render him unfit to be an engraver and he could not tolerate the long periods of standing that a lens grinder would have to be able to endure. She added he could possibly be an elevator operator because he could change positions, but that there are very few jobs of this sort available. She also felt a great deal of hard work and effort would be required to give him a basic education.
On cross-examination, Ms. Smith said Goodwin could do certain types of jobs, even some painting, but only “if he had sheltered conditions and this would take him out of the competitive labor market.”
Another expert who testified was Judith Depew, who is employed by the Louisiana Office of Employment Securities. She had also administered a number of tests to Goodwin. She concluded she could not say it would be impossible for him to find any kind of work because of the possibility a relative might give him a job or he might be able to watch a store at night, but she said “if you throw him out into a competitive society it’s going to be very difficult because he cannot even fill out an application, and someone would have to pave the way for him with an employer.”- She said, in regard to guard jobs, most of them would require the ability to make out reports and the ability to climb stairs, and not many of these jobs would allow plaintiff to sit for hours in a hard back chair, as required for his back. Regarding other unskilled positions, she said employers usually want the person to be able to do anything that needs to be done in the shop, including lifting heavy objects. Perhaps Ms. Depew’s analysis of plaintiff’s work ability can best be summed up by her statement that: “I can’t think of anything that I could just pinpoint and say, well, he’d be just right for this.”
Deborah Baragona testified for the defense as a rehabilitation counselor at Crawford Rehabilitative Services. An intelligence test administered to Goodwin earned him a score of 75, which is borderline between dull, normal and mentally defective. Regarding the available work she testified that he could work as a lens grinder under certain conditions but was not particularly suited to a guard position, firearms cleaning, painting or engraving. The only job she would recommend for Goodwin is game room attendant, but with the admission that he would have to make change and be able to chase away vandals.
In view of Canter v. Koehring Company, 283 So.2d 716 (La.1973), we must determine from the record and all of the evidence whether the trial court was “clearly wrong” in not finding the plaintiff totally and permanently disabled within the intent of LSA-R.S. 23:1221(2) as amended in 1975, which states:
“Compensation shall be paid under this Chapter in accordance with the following schedule of payments:

(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.”
*1330 In Dufrene v. St. Charles Parish Police Jury, 371 So.2d 378, 380-81 (1979), this court said:
“Our settled law is that a plaintiff in a compensation case must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Also pertinent here is the rule that an injured workman is not required to work with substantial pain. Whether the compensation claimant is unable to work without pain sufficiently severe to be considered disabling is a question of fact.

“ * * * We would agree that the employee is not called upon to negate his future employment in each of the many occupations which might be available, but he must show that he reasonably could not do work of a reasonable character available to him.”
In Ashworth v. Elton Pickering, Inc., 361 So.2d 940 (La.App. 3d Cir. 1978), in reversing the trial court’s finding of permanent partial, not total, disability, and decreeing plaintiff to be totally and permanently disabled, the court stated at page 944:
• “We conclude that the plaintiff is unable to engage in any gainful occupation. Unlike Kilbourne [v. Armstrong, 351 So.2d 802 (La.App. 1 Cir. 1977)], the plaintiff has made no admission that there is work which he could perform. On the contrary, he has steadfastly contended that he is unable to engage in any gainful occupation. The testimony indicates that from a solely medical prospective the plaintiff could engage in some light jobs. The workmen’s compensation law, however, is not based solely on a medical prospective. To do so would return us to the evil which the 1975 Legislature intended to eliminate by bringing into focus the reasonable earning capacity of the worker subsequent to the injury. The plaintiff has no reasonable ability to engage in any gainful occupation, in his physical condition. [Emphasis in the original.] This is consistent with the legislative intent to bring into focus the economic realities of the situation. [Emphasis ours.] We make our decision without considering the plaintiff’s education, training, or experience, but we note that the legislature was restrictive in the language it used in the 1975 amendment relating thereto. The amendment states:
‘whether or not an occupation for which the employee, at the time of the injury was particularly fitted by reason of education, training, and experience.’
(Emphasis ours.)
Clearly, the inference is that if the employee could become qualified for an occupation by a reasonable degree of further education, training, or experience, then the lack of the particular education, training, or experience which is required is irrelevant. Conversely,' we believe that the legislature intended that where an employee would become fit for any gainful occupation only by an unreasonable degree of further education, training, or experience, the extreme lack of education, training, or experience would be relevant to our analysis. As noted, however, we find that in the instant case, the plaintiff has no reasonable ability to engage in any gainful occupation based on his physical condition, without regard to his illiteracy and lack of training or experience.”
This court is well aware of the great weight that must be given to the trial judge’s finding of fact. We agree with counsel for defendants-appellees that in view of the decisions the “Trial Court’s resolution of a factual issue may not be reversed on appeal in the absence of ‘manifest error’ ”. That term is said to mean “clearly wrong.” Davis v. Owen, 368 So.2d 1052 (La.1979); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); and Canter v. Koehring Company, supra.
We find that in the instant case the learned trial judge was wrong within the meaning of Davis, supra; Arceneaux, supra; and Canter, supra.
All of the facts considered, we conclude that Kenneth Goodwin by reason of his education, intellectual, and physical limi *1331 tations cannot compete in the labor market and cannot engage in any gainful occupation and is, therefore, totally and permanently disabled within the meaning of the 1975 amendment to LSA-R.S. 23:1221(2).
For the above reasons we hereby amend that portion of the trial court’s judgment which found plaintiff, Kenneth Goodwin, partially disabled and entitled to the amount of $85 per week for a period of 400 weeks, and it is hereby ordered, adjudged and decreed that the said Kenneth Goodwin is totally and permanently disabled within the meaning of LSA-R.S. 23:1221(2) as amended and is therefore entitled to workmen’s compensation benefits at the rate of 66%% of his wages not to exceed $85 per week for as long as the said disability shall continue. In all other respects we affirm the judgment of the trial court. All costs of these proceedings are to be paid by defendants.

AMENDED AND AFFIRMED.

. Defendants’ attorney has noted in his answer to appeal that Steve Stathes’ compensation insurer was incorrectly denominated Employers Casualty Company in both the plaintiff’s petition and the court’s judgment and has further noted that Stathes’ compensation insurer is, in fact, Employers National Insurance Company.