STOKER, Judge.
Plaintiff, Lee Rushing, Jr., instituted this workmen’s compensation action against John L. Pleasant, and his workmen’s compensation insurer, Insurance Company of North America, seeking benefits for total and permanent disability. Following a trial, judgment was rendered in favor of *865 plaintiff awarding benefits for total and permanent disability, medical expenses, penalties and attorney’s fees. The insurer brings this appeal from the judgment rendered below. Plaintiff answered the appeal seeking an increase in attorney’s fees to $5,000.
Plaintiff was employed by Mr. Pleasant as a painter. On April 17, 1976, plaintiff fell from a stepladder onto a concrete walk. Plaintiff reported the accident to a fellow employee and continued working. Plaintiff worked the next day, but did not return to work the following Monday.
Several days after the accident, plaintiff sought treatment for his left knee at the Veterans Administration Hospital. He was diagnosed as having osteomyelitis in the knee, a degenerative knee condition. Approximately two months after the accident a surgical fusion of the knee was performed on plaintiff. Plaintiff has not returned to work since the surgery.
Following surgery, plaintiff requested workmen’s compensation benefits from his employer. Upon rejection of his claim, plaintiff instituted this action.
On appeal, appellant makes several assignments of error. Appellant contends the trial judge erred (1) in finding plaintiff’s disability was caused by a work-related accident, (2) in finding plaintiff totally and permanently disabled, (3) in finding defendants liable for penalties and attorney’s fees, and (4) in awarding excessive attorney’s fees. As noted above, the plaintiff seeks an increase in the attorney fees.
WAS PLAINTIFF’S DISABILITY CAUSED BY A WORK-RELATED ACCIDENT?
The medical testimony established that plaintiff as a result of the knee fusion cannot return to his former employment. The issue presented is whether plaintiff’s disability was caused by a work-related accident.
In his written reasons for judgment, the trial judge found that plaintiff sustained an injury by falling from a ladder at work. The judge also found that this trauma caused the flareup of the dormant osteo-myelitis condition which required the knee fusion surgery. Plaintiff testified that he fell from a ladder, striking and injuring his left knee. Plaintiff underwent knee surgery within two months of the accident.
A substantial question is posed as to whether plaintiff actually did suffer an accident, and if he did, whether it played any part in causing plaintiff to undergo the knee fusion. The defendant employer and his son, who was plaintiff’s foreman, gave testimony contrary to that of plaintiff and of Malcolm Tarver, another employee who was on the job where plaintiff alleges he was hurt. The trial court’s conclusions indicate that he accepted the testimony of plaintiff and Malcolm Tarver over that of defendant and his son. As this is a credibility evaluation in which there is no evidence in the record to establish that the trial court was clearly wrong, it must be affirmed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
Dr. V. L. Davidson did not do the surgical procedure but testified that it was necessary to perform the surgical fusion on plaintiff because a pre-existing degenerative knee condition had been aggravated. Dr. Davidson was of the opinion that it was very probable that trauma had caused the aggravation. Dr. Ray J. Beurlot, Jr., a private practitioner in orthopaedics, was of a similar opinion.
Defendants presented no evidence of any other trauma which could have aggravated the condition. Under these facts, we cannot say that the trial judge committed manifest error in finding that plaintiff’s disability was caused by a work-related accident.
Appellant complains of the failure of the plaintiff to call the physician who actually did the fusion surgery, Dr. W. R. Eroche. Plaintiff had a long history of knee troubles and had undergone previous knee surgery. Appellant’s contention is that plaintiff’s problem necessitating the knee surgery was one resulting from gradual deterioration of the knee joint. Appellant argues that only by calling Dr. Eroche could it be shown that *866 trauma had brought on the condition rather than deterioration. Appellant urges, therefore, that we must draw an inference adverse to plaintiff on the issue of causation under Vidrine v. Sentry Indemnity Company, 341 So.2d 558 (La.App. 3rd Cir. 1976), writ refused 343 So.2d 202 (La.1977).
In Vidrine this court stated that “the rule of evidence is that when the plaintiff is unable to provide a sufficient explanation as to why a treating physician’s testimony is not introduced, it is presumed that such testimony would be adverse to plaintiff’s cause.” The court referred to McCauley v. LaFleur, 213 So.2d 176 (La.App. 3rd Cir. 1968) and the cases cited therein. This presumption, however, is a rebuttable one. Bailey v. St. Paul Fire & Marine Insurance Company, 268 So.2d 697 (La.App. 1st Cir. 1972), writ refused, 270 So.2d 873 (La.1973). The circumstances ,of the Vidrine case are distinguishable from those here. Plaintiff’s knee surgery was done at the Veterans Administration Hospital in Alexandria, Louisiana. Dr. Eroche was a member of the staff of that hospital at the time he treated plaintiff and performed the operation. At the time of trial, he was no longer at that hospital. If Dr. Eroche was available to plaintiff, he was equally available to defendant. Under such circumstances this court has held that the presumption of Vidrine in inapplicable. Slocum v. American Casualty Insurance Company, 189 So.2d 299 (La.App. 3rd Cir. 1966) and Ellis v. Coleman, 309 So.2d 716 (La.App. 4th Cir. 1975). In this case we find no reason to apply an adverse presumption because of plaintiff’s failure to produce testimony by Dr. Eroche.
IS PLAINTIFF TOTALLY AND PERMANENTLY DISABLED?
The appellant contends that the trial judge erred in finding plaintiff totally and permanently disabled.
Under the Louisiana Workmen’s Compensation Law, a claimant is totally disabled only if a work-related injury produces total disability of the claimant to engage in any gainful occupation. LSA-R.S. 23:1221. Medical testimony established that plaintiff could not return to his former employment as a painter or engage in any employment requiring excessive climbing, moving, or kneeling.
Although plaintiff cannot again work as a painter, both Dr. Davidson and Dr. Beur-lot were of the opinion that plaintiff could do work which did not involve such activities and bodily functions. Dr. Beurlot did not elaborate on this question. Dr. Davidson, when pressed on the matter, gave the following testimony on transcript page 96:
“Q. All right. Do you feel like he can compete with a whole man in any job market?
BY MR. SPENCE: Your Honor, I object to that question. It’s outside the scope of qualifications of Dr. Davidson.
BY MR. FORD: Okay.
BY THE COURT: I’d be inclined to let him answer that. He obviously has not established an expertise in the safety/maintenance field or anything like that, but he’s entitled to give some opinion. You may answer, Dr. Davidson.
A. I think he probably ... in some job ... in some job markets I think he could be considered competitive. But these would be menial type jobs. Things like one of the fellows who sits and collects money at a service station where it’s a self-service station and everybody pumps their own gas. That sort of thing.
BY MR. FORD:
Q. All right. Would he be at a disadvantage in competing for any job which required any mobility at all?
A. Yes, sir, I think he would.”
Despite this medical testimony the trial court found that plaintiff was not only totally and permanently disabled as a painter, but was also disabled from performing any type of gainful employment “within the purview of his capabilities”. This holding was evidently not based upon considerations of pain as the medical testimony does not *867 establish that working would cause pain. On the other hand, the evidence does establish that sitting at work would present something of a problem and probably cause discomfiture.
The issue presented by these facts is whether or not plaintiff is totally and permanently disabled or partially disabled under the 1975 amendments to LSA-R.S. 23:1221.[1] The 1975 statutory revision of these concepts has been considered by this court and other circuits in a number of contexts. Among the cases which might be cited are LeBlanc v. Commercial Union Assurance Company, 349 So.2d 1283 (La.App. 1st Cir. 1977), writ denied, 351 So.2d 174 (La.1977); Rachal v. Highlands Insurance Company, 355 So.2d 1355 (La.App. 3rd Cir. 1978), writ denied, 358 So.2d 645 (La.1978); Phillips v. Dresser Engineering Co., 351 So.2d 304 (La.App. 3rd Cir. 1977), writ denied, 353 So.2d 1048 (La.1978); J. D. Armstrong v. Gulf States Fishing and Rental Tools, Inc., 338 So.2d 779 (La.App. 4th Cir. 1976), writ denied, 341 So.2d 894 (La.1977); Cullivan v. Fish Engineering and Construction Company, Inc., 354 So.2d 597 (La.App. 3rd Cir. 1977), writ not considered, 351 So.2d 254 (La.1978); Ashworth v. Elton Pickering, Inc., 361 So.2d 940 (La.App. 3rd Cir. 1978), writ denied, 362 So.2d 1119 (La.1978); Turner v. American Mutual Insurance Companies, 375 So.2d 113 (La.App. 3rd Cir. 1979), writ granted, 376 So.2d 1271 (La.1979); Mayes v. Louisiana-Pacific Corporation, 379 So.2d 46 (La.App. 3rd Cir. 1979), writ denied, 381 So.2d 1232 (La.1980), and Goodwin v. Stathes, 381 So.2d 1327 (La.App. 4th Cir. 1980).
The problems with which we are faced are pointed up by the Cullivan, Ashworth, Turner and Goodwin cases. Here we are limited to the testimony of the physicians who testified, both of whom expressed the opinion that plaintiff can do some kind of work. At the same time, it is quite clear that plaintiff is extremely handicapped physically. Dr. Davidson indicates that the kind of employment open to plaintiff is quite limited. The record reveals little about plaintiff other than that he was fifty-one years old at the time of trial, has the equivalent of a high school diploma, has been a painter since 1948 and has no other training or skill. As an adult Rushing has limited his work to painting.
Manifestly the trial court concluded, despite the two physicians’ testimony, that plaintiff was not actually capable of engaging in any gainful occupation for wages. Under the circumstances the trial court evidently concluded that the medical testimony did not realistically appraise the plaintiff’s physical ability to perform work for which there might be opportunity for employment. Such a decision might well rest on the fact that legal disability to engage in any gainful work and disability from a medical perspective are not necessarily the same. In view of plaintiff’s obviously limited physical capabilities, we cannot say that the trial court was clearly wrong in finding plaintiff totally and permanently disabled and entitled to compensation benefits under LSA-R.S. 23:1221(2).[2] Cf. Fazande v. Continental Grain Company, 363 So.2d 1253 (La.App. 4th Cir. 1978). Consequently, the trial court’s holding in this regard will be affirmed.
PENALTY’S AND ATTORNEY’S FEES
The trial court awarded plaintiff statutory penalties and attorney’s fees in the amount of $2,500. The defendant-appellant insurer assigns as error on this appeal the awarding of any attorney’s fees, and alternatively, complains that the amount is excessive.
*868 Plaintiff answered this appeal asking for an increase to $5,000.
Before this court, the appellant contends that where there is a genuine dispute as to the occurrence of an accident or the causal relationship between the accident and disability, the insurer is not arbitrary in requiring a judicial determination of the claimant’s entitlement to compensation.
The appellant does not complain of the award of penalties and attorney’s fees on the ground that there was an issue as to whether plaintiff was totally or partially disabled. Moreover, where a claimant is at least partially disabled, an employer is liable for penalties and attorney’s fees in failing to commence compensation payments. Fazande v. Continental Grain Company, supra, and Melerine v. Brown & Root Inc., 284 So.2d 809 (La.App. 4th Cir. 1973).
As recently stated in Henley v. F. G. Sullivan, Jr., Contractor, 385 So.2d 497 (La.App. 1st Cir. 1980):
“L.S.A.-R.S. 22:658 provides that a 12% penalty and attorney fees may be imposed only when failure to pay is ‘arbitrary, capricious, or without probable cause.’ This statute being penal in nature must be strictly construed and the burden is on the claimant to prove that failure to pay was arbitrary, capricious or without probable cause. Gauthier v. Employers National Insurance Co., 316 So.2d 769 (La.App. 1st Cir. 1975).”
The evidence is in hopeless confusion as to when the employer, John L. Pleasant, Sr., was first notified that plaintiff was making a claim for workmen’s compensation. Admissions by plaintiff himself clearly show that he led his employer to believe that his injury was of no consequence and that he did not contemplate making a claim for compensation. See particularly Transcript pages 112 through 117. Plaintiff admitted that he had never at any time notified Pleasant that he had what he considered to be a workmen’s compensation claim. Tr. 117. He also testified that he never advised Pleasant that he needed medical attention for his knee prior to the time he was hospitalized in the Veterans Administration Hospital. Tr. 117. Plaintiff claims he telephoned Pleasant from the hospital but admits that he had no purpose in calling him other than that he wanted Pleasant to know he was in the hospital. Tr. 116. Pleasant denies that plaintiff called from the hospital. Tr. 148. Although plaintiff admittedly did not think much of his injury initially (Tr. 114) and he clearly did not make a claim at an early date, John L. Pleasant, Sr. notified the appellant insurer within five days of the accident that plaintiff claimed to have had an accident. Tr. 38. We are inclined to believe plaintiff did not further press the matter until his attorney asserted a claim on his behalf.
Irrespective of the lack of any notice or demand by plaintiff personally, formal demand was made on John L. Pleasant, Sr. by letter from plaintiff’s counsel dated August 3, 1978, and received by Pleasant several days later. Plaintiff’s suit was filed on January 18, 1979, against Pleasant and his insurer, the appellant here. The hospital records pertaining to plaintiff from the V. A. Hospital were supplied to defendants on January 26, 1979, and further demand by letter from plaintiff’s counsel was sent on February 13, 1979.
No compensation or other benefits have ever been paid by defendants.
In essence appellant relies on the principles that the existence of a serious issue of fact will justify refusal to pay compensation benefits and that employers and their insurers are not to be penalized for taking their case to court for judicial resolution of a close factual question. Thompson v. Natchitoches Parish Hospital Service Dist., 335 So.2d 81 (La.App. 3rd Cir. 1976), writ denied, 338 So.2d 298 (La.1976); Guillory v. Travelers Insurance Company, 294 So.2d 215 (La.1974).
Although the trial court found for the plaintiff on both of the factual issues raised by the appellant which are urged as justification for refusal to pay compensation to plaintiff, we view these two issues as having given defendants probable cause *869 for denying compensation. The trial court’s finding of the occurrence of accident on the job is based largely on plaintiff’s own testimony. In addition, the testimony of plaintiff’s co-worker Tarver shows the accident was reported to him shortly after it occurred and that Tarver saw the plaintiff’s knee that night and noted evidence of injury to the knee. While it is well established that a plaintiff may establish the occurrence of an accident by his own testimony, there was a very serious credibility issue to be resolved by the court. Moreover, plaintiff’s own admission at the trial discloses that even as of the date of his hospitalization he was not pressing a claim for compensation and that early after the accident he did not view his injury as significant. Plaintiff also led his employer to believe he was not making a compensation claim.
With respect to the causation question the conclusion of the trial judge that there was causation must rest upon the testimony of Rushing’s physicians to the effect that trauma to the knee sustained in falling from a ladder could have aggravated Rushing’s pre-existing condition. While this is legally sufficient to permit a finding of causation, there is no way of relating the necessity of the knee fusion directly to the accident. The issue is a serious one and is sufficient in our opinion to constitute probable cause to withhold payment of compensation and to absolve defendants from the charge that they were arbitrary and capricious in doing so.
For these reasons we hold that the imposition of penalties and award of attorney’s fees was not appropriate. Accordingly, we affirm the judgment of the trial court in all respects except for the award of penalties and attorney’s fees. The judgment of the trial court is reversed in that regard and penalties and attorney’s fees are denied.
AFFIRMED IN PART AND REVERSED IN PART.
STOKER, J., concurs in the result and assigns written reasons.

. Act No. 583 of the Louisiana Legislature of 1975.

. A significant difference between LSA-R.S. 23:1221(2), total disability, and LSA-R.S. 1221(3), partial disability, is that in case of the total disability the disabled employee is paid compensation “during the period of such disability,” whereas in the case of partial disability the employee is paid for a maximum number of weeks only. For accidents occurring after September 1, 1977, the maximum is 450 weeks. Where partial disability compensation is awarded and the employee actually earns a wage during his disability, the wages actually earned are taken into account as provided in LSA-R.S. 23:1221(3).