ALFORD, Judge.
This is an action for worker’s compensation benefits, statutory penalties, and attorney fees under the Louisiana Worker’s Compensation Act. Following a trial on the merits, the trial court rendered judgment in favor of plaintiff/appellee, Cather-yne Rogers, granting worker’s compensation benefits for total and permanent disability at the rate of $160.54 per week, beginning March 6,1983 (subject to a credit for amounts paid) with legal interest and attorney fees of $3,000.00. From that judgment, defendant/appellant, Pizza Hut, Inc., appeals and assigns as error the trial court finding of total and permanent disability and the finding that appellant’s actions in discontinuing benefits were arbitrary and capricious.
FACTS
On March 6, 1983, Mrs. Rogers alleges that while performing her duties as assistant manager of a Pizza Hut store located in Hammond, Louisiana, she slipped and fell while turning off the lights at the close of the work day. Mrs. Rogers testified at trial that in order to reach the light switches, it was necessary to put one foot onto the bowl of a dough mixer and the other onto a bread rack, and that as she did so her foot slipped. Mrs. Rogers testified that she slid down the rack, striking her mouth and landing on the floor, a fall of approximately thirty inches. She was unable to recall exactly, in what position she landed. Mrs. Rogers further testified that since the accident occurred after midnight, she went home without notifying anyone of her injury. Mrs. Rogers testified that she was in a great deal of pain that night and the next morning.
Mrs. Rogers was examined by Dr. Daniel Sinclair, an orthopaedist, on March 7, 1983. Dr. Sinclair testified that Mrs. Rogers was reporting pain in the lumbar area of the back and in the right posterior hip area. Dr. Sinclair’s examination revealed below normal range of motion on forward flexion and left lateral bending, low back pain on a straight leg raising test, and subjective diminished sensation involving the right leg and dorsum of the right foot. X-rays revealed marked narrowing of the L5-S1 disc space with reactive sclerosis in the adjacent margins of the vertebral bodies. Dr. Sinclair also found malformed facet joints at L4-5 and L5-S1. Following this examination, Dr. Sinclair diagnosed an aggravation of a pre-existing degenerative disc disease at the lumbosacral level. Mrs. Rogers was instructed in conservative care of the spine and proper biomechanics of the back. She was also prescribed an anti-inflammory drug, a muscle relaxant and an analgesic. Mrs. Rogers was instructed not to work. *1094 Mrs. Rogers was advised to walk as tolerated in order to prevent demineralization and atrophy of the bones that would otherwise result from inactivity. Dr. Sinclair related the aggravation of Mrs. Rogers’ pre-existing condition to her fall on the basis of the history as given to him.
Dr. Sinclair treated Mrs. Rogers through January of 1984; at which time she unilaterally discontinued treatment. During that time period, Mrs. Rogers constantly complained of pain. In addition to the treatment initially prescribed, Dr. Sinclair changed Mrs. Rogers’ medication on several occasions and in July of 1983 a pelvic traction setup was prescribed, which Mrs. Rogers performed in the home. Dr. Sinclair felt that these forms of conservative non-operative treatment were more appropriate for Mrs. Rogers’ condition than surgical intervention.
After Mrs. Rogers’ January 2, 1984 appointment with Dr. Sinclair, he did not see her again until April 1, 1987.* At that time, he examined her and had additional x-rays taken. Dr. Sinclair testified that Mrs. Rogers’ condition had not changed and that she reported low back pain radiating into the posterior aspects of both thighs and that she complained of increased pain with increased activities.
Dr. Sinclair opined that Mrs. Rogers’ pain would not resolve completely, although he stated that, generally, most patients with this type of pre-existing condition at some point return to their pre-injury status. Dr. Sinclair described Mrs. Rogers’ symptoms as an inconvenient type of pain and recommended that she try to adapt her lifestyle to remain as active as her back would allow while minimizing high risk situations. Dr. Sinclair stated that he would encourage a patient such as Mrs. Rogers to seek some type of employment but noted that she would have discomfort and periodic pain regardless of the type work she undertakes and that she might have occasional flare-ups requiring medical treatment. Dr. Sinclair testified that Mrs. Rogers is restricted in her activities from climbing, bending, stooping, sitting or standing for extended periods of time, and lifting of more than ten to fifteen pounds.
On September 23, 1983, Mrs. Rogers was examined by Dr. John Clifford, a neurosurgeon. Mrs. Rogers was referred to Dr. Clifford by Crawford and Company, the company responsible for administering claims on behalf of Pizza Hut, Inc. Following testing which included an EMG, a CAT scan, and a DSER, Dr. Clifford found evidence of a circumferential disk bulge at L4-5 without herniation, a slight narrowing of the spinal canal, and severe degenerative changes at the lowermost disk level with vacuum phenomenon ridging. Dr. Clifford diagnosed pre-existing lumbar spondylosis that could have been aggravated by the March, 1983 fall. Dr. Clifford recommended that Mrs. Rogers undergo a myelogram.
Mrs. Rogers had only two office visits with Dr. Clifford, the initial examination on September 23, 1983, and a visit on October 24, 1983, during which the myelogram was discussed and scheduled. Although Dr. Clifford did not see Mrs. Rogers after that, she did have some contact with members of his staff as described hereinafter. Dr. Clifford opined at trial that if Mrs. Rogers had an active process resulting from her 1983 fall that, at the time of the trial, it was probable that her condition would have worsened. Dr. Clifford acknowledged that such a condition would necessitate restricted activities.
On October 24, 1983, a myelogram had been scheduled for November; however, the appointment was cancelled by Mrs. Rogers when her son became involved in an auto accident. When Dr. Clifford’s medical assistant, Jeanette Durrer, later called Mrs. Rogers to re-schedule the mye-logram, Mrs. Rogers declined to undergo the procedure. Ms. Durrer testified that according to the notation she made at the time of her phone conversation with Mrs. Rogers, Mrs. Rogers informed her that *1095 “she was better and didn’t want any intrusive tests run on her”; however, Ms. Durrer had no independent recollection of the conversation. Mrs. Rogers testified at trial that she informed Ms. Durrer that she felt they had enough information to form an opinion on her condition and did not want to have any further intrusive tests performed on her; she denied reporting to Ms. Durrer that she was “better.” Mrs. Rogers further testified that because of undesirable consequences suffered by her son-in-law following a myelogram, she was fearful of submitting to the test and for this reason refused to submit to it.
Mr. Glenn Broussard, the claim adjuster for Crawford and Company, testified at trial that Mrs. Rogers’ benefits were terminated on April 14, 1984. At that time, he testified that $1,792.54 had been paid in medical benefits and approximately $9,469.00 had been paid in compensation benefits. Mr. Broussard further testified that Mrs. Rogers’ benefits were terminated following the receipt of a letter to Crawford and Company from Dr. Clifford. Dr. Clifford’s letter read as follows:
We have contacted Ms. Rogers and she tells me that at this time she is asymptomatic and did not believe that further investigative procedures were necessary and I am in full agreement with this. If you have any questions, please do not hesitate to contact me.
DISABILITY
The trial court in its reasons for judgment stated that Mrs. Rogers “is presently totally disabled and has been since March 6, 1983.” An appellate review of this finding must reveal manifest error in order .to justify modification of the judgment. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We are unable to say that the trial court finding is clearly wrong.
Mrs. Rogers testified at trial that her condition has worsened over the years. She testified that she is unable to engage in normal household activities, such as cooking, cleaning, sweeping, mopping, or vacuuming. Mrs. Rogers further testified that she previously enjoyed horseback riding, bicycling, swimming, and walking outdoors, but, cannot do so now. Mrs. Rogers’ husband, Walter Rogers, testified regarding the difficulties Mrs. Rogers experiences in performing even minor household chores; as well as, the problems Mrs. Rogers has sleeping. Mr. Rogers corroborated his wife’s testimony that she had no physical problems prior to the accident. Although the medical evidence indicates Mrs. Rogers had a pre-existing degenerative condition, an aggravation of that condition is fully compensable if the employee was symptom-free prior to the aggravating accident. Duncan v. R.J. Reynolds, Inc., 305 So.2d 707 (La.App. 4th Cir.1974). It is implicit in the trial court finding that Mrs. Rogers was symptom-free prior to her fall of March 6, 1983. We find no error in this determination.
STATUTORY PENALTIES
Liability for the payment of all reasonable attorney fees for the collection of a worker’s compensation claim is imposed on the employer by La.R.S. 23:1201.2 when the discontinuance of payments is found to be arbitrary, capricious, or without probable cause. The trial court found that Pizza Hut, Inc. acted in bad faith and without any justification in terminating Mrs. Rogers’ benefits, and that, such action was arbitrary and capricious. We agree.
An employer’s reliance, in terminating benefits, on a treating physician’s report that the employee has been released to return to work cannot be considered arbitrary and capricious. Rodney v. Crown-Zellerbach Corp., 470 So.2d 538 (La.App. 1st Cir.1985); Bailey v. St. Paul Fire & Marine Ins. Co., 268 So.2d 697 (La.App. 1st Cir.1972), writ denied, 270 So.2d 873 (La.1973). In some instances an employer’s termination of benefits may be considered arbitrary and capricious when further medical information is required to make an exact determination of the employee’s medical condition. See Chance v. The Fidelity & Casualty Co. of New York, 509 So.2d 593 (La.App. 3d Cir.1987).
*1096 In the case sub judice, the trial court could have found that Dr. Sinclair was Mrs. Rogers’ treating physician. Such a finding would not be manifestly erroneous. Thus, appellant’s reliance in terminating Mrs. Rogers' benefits on Dr. Clifford’s letter was unjustified. Appellant should have obtained the opinion of Mrs. Rogers’ treating physician, Dr. Sinclair, prior to the termination of benefits. Accordingly, the award of attorney fees to Mrs. Rogers should be affirmed.
For the reasons stated in the foregoing opinion, the judgment of the trial court is affirmed with all costs of this appeal to be borne by the appellant herein.
AFFIRMED.

 Mrs. Rogers explained that she discontinued her visits to Dr. Sinclair for several reasons; i.e., he had indicated she would have to learn to live with the pain, her treatment remained the same visit after visit and the sixty minute car ride to the doctor's office was painful for her.